JOHN TAGGARD & al. *versus* GEORGE W. BUCKMORE.

A *general lien*, at common law, is the right to retain the property of another, to secure a general balance of accounts.

A *particular lien* is a right to retain the property of another, only for a charge on account of labor employed or expenses bestowed upon the identical property detained.

The lien provided in the Revised Statutes, c. 125, § 35, is not a general lien, but the same as a particular lien at common law.

Materials, sold by one party to another, under the representation that they would be wrought into a vessel, which the latter contemplated building, or which was in process of construction by him, but which were not so used, would not create a lien on such vessel.

If, however, such materials were incorporated into a vessel other than that designated, the lien would attach to the vessel on which they were in fact used.

A. sold a quantity of iron to B. A portion was incorporated in a vessel, and the balance was appropriated to other purposes. A. afterwards recovered judgment for the whole of the iron: — *Held,* that this was a waiver of the lien, as the value of the iron not used about the vessel was merged in the judgment, and could not be separated from the other portion.

The law requires no useless ceremony. An officer is not liable, as for an omission of duty, for neglect to deliver an article which had been attached in the suit but which could not legally be sold on the execution.

ON FACTS AGREED, from *Nisi Prius.*

Taggard *v.* Buckmore.

This was an action of CASE, and came to this Court on facts agreed to be as follows:—

A. Scammons & Co., in the spring of 1854, commenced building a vessel, and applied by letter to plaintiffs to furnish iron for that purpose. Accordingly, plaintiffs, in the months of April and June of that year, furnished two bills of iron for the construction of such vessel, which was received in the yard and was ready for use. About half the amount of iron so furnished, was actually used in said vessel; but the balance was otherwise used by A. Scammons & Co., or remained unused in the yard. In July of the same year, A. Scammons & Co. failed, and the vessel and all wood materials in the yard, were attached and sold to one party by consent on the writs, the iron materials being sold at the same time to other parties; and the officer proclaimed and made known at such sale, that he offered the vessel for sale subject to all liens thereon.

Subsequent to that sale, the plaintiffs brought an action to enforce their lien, provided they had any, upon said vessel for the iron so furnished, and delivered their writ, with instructions thereon, to defendant, then sheriff, for service; and said defendant thereafter, as directed, attached said vessel then on the stocks, and on the 26th day of September, 1854, made due return thereof upon said writ. The action was afterwards defaulted, and plaintiffs recovered judgment for the whole bill and costs, and execution was duly issued thereon, and the plaintiffs thereafter, to wit, on the eighth day of May, 1855, and within thirty days of the rendition of judgment in their said action, caused a legal demand to be made on said Buckmore, who was then and there requested to produce said vessel, that the same might be taken on said execution, but he neglected and refused so to do, and said execution still remains unsatisfied.

If this action is maintainable, a default is to be entered; otherwise a nonsuit. If plaintiffs are entitled to hold for so much of such iron as was actually worked into said vessel only, then damages are to be assessed.

*T. Robinson,* for plaintiffs.

Plaintiffs have sued for their whole bill. It was one contract, furnished for one purpose, all being of a description subject to protection under the lien law. It was of the kind and description for which the law gives a lien; and for such only did they recover judgment against the builders of the vessel, which was seasonably attached by defendant, by their directions, and in the mode to secure their lien; and if they fail to hold defendant responsible, they lose their entire demand.

Persons furnishing materials cannot be held to follow the materials *furnished* and witness the appropriation of the whole to the purpose designed. If it is the material for which the law provides the lien, unmixed with other things, delivered in good faith, and appropriated in the main to the object intended, it would be greatly unjust to allow any misappropriation, or non-use of a part, to defeat the intent of the law; for if the provisions of the law can be thus evaded, it will but serve to entrap, rather than protect the rights of those dependent upon it. Parties should only be held to a reasonable compliance with the terms of the law, to claim its benefits. The words of the statute are plain and of unmistakable import; affording a safe exposition of the meaning and intent of the law. It reads, "any person, who shall *furnish* materials, for, or on account of any vessel building, or standing on the stocks, shall have a lien on such vessel," "and may secure such lien," &c. Now, in the case at bar, it is agreed that plaintiffs furnished the iron for the vessel, and that it was so received, and had been in part applied, when the failure of the owners occurred. The lien had clearly attached, before that event, and the vessel stood charged with the whole amount furnished by plaintiffs. The letters in the case, and other facts agreed, place the claim in a favorable light, and leave no doubt as to the meaning and intent of the parties; an equally liberal interpretation of the law as obtained in *McCrillis* v. *Wilson,* 34 Maine, 286, will secure all that is claimed by plaintiffs. A lien, in that case, was suffered to

attach for labor *not* performed, and upon logs upon which *no* labor was shown to have been expended. Plaintiffs' lien having once attached, cannot be disturbed by the subsequent sale of the vessel by the general creditor.

*A. Wiswell,* for defendant.

1. If plaintiffs had a lien for any part of their bill, by taking judgment for the whole amount of both bills, upon some items of which there was no lien, they have waived it.

In each bill rendered there is an item for " truckage." No lien could attach for those items. The plaintiffs could have charged and taken judgment for the freight of the iron from Boston with the same propriety. The amount of the items charged is of course immaterial. A person may enforce a lien for his own labor, but not for the labor of another. In this case the plaintiffs undertake to enforce a lien for the labor of the truckman. *Pearsons* v. *Tinker,* 36 Maine, 384; *Johnson* v. *Pike,* 35 Maine, 291; 34 Maine, 273 and 286.

2. The case finds that only about one half of the iron furnished, and for which judgment was taken, was used in the vessel; the other half having been used by A. S. & Co., and sold by the sheriff to parties other than those who purchased the vessel. If the iron had been furnished for and on account of the vessel, in compliance with the statute, it is contended that no lien could be enforced for that portion not used.

It has been expressly decided in the case *Phillips* v. *Wright,* 5 Sandford, N. Y., 342, that "the material man has no lien unless he proves that the materials he furnished were used in the construction of the vessel. He has a lien for all proved to be so used."

In the case at bar, provided plaintiffs had furnished and charged the iron, in accordance with the statute, and had sued and recovered judgment for all proved to have been used in the vessel, then it is admitted plaintiffs would have had a lien for such part of the iron.

Neither of these conditions has been complied with, and this suit, it is believed, cannot be maintained. *Hull of New Ship,* Davies, 199.

Taggard *v.* Buckmore.

TENNEY, C. J. — Any shipcarpenter, caulker, blacksmith, joiner or other person, who shall perform labor, or furnish materials for or on account of any vessel building, or standing on the stocks, &c., shall have a lien on such vessel, &c. R. S., 1841, c. 125, § 35.

As in other cases, we must resort to the common law, to ascertain the meaning of the term "lien;" and it is there thus defined: "A general lien is the right to retain the property of another for a general balance of accounts; but a particular lien is a right to retain it only for a charge, on account of labor employed, or expenses bestowed upon the identical property detained." 2 Kent's Com. 634. The author adds, "The one is taken strictly, but the other is favored in law. The right rests upon principles of natural equity and commercial necessity."

The lien referred to in the statute cannot be a general lien; the language forbids such construction. But in its character, it is the same as a particular lien, at common law.

The principle embraced in the statute is founded in natural justice, that the party, who has enhanced the value of the property, by incorporating therein his labor or materials, shall have security on the same, though changed in form, and inseparable from the property. But justice does not require, that he should be allowed the security, in the same property, for the price of materials, which became no part thereof.

Materials, sold by one party to another, under the representation that they would be wrought into a vessel, which the latter contemplated building, or which was in the process of construction by him, and afterwards diverted from that purpose, by being disposed of by the purchaser, or taken and sold on an execution against him, so that they never became a part of the vessel, have not been bestowed upon the identical vessel, for which they were purchased; but may in fact have been incorporated into another vessel, to which the lien could with greater propriety attach.

If the doctrine advocated by the plaintiffs' counsel should prevail, the laborers upon a ship, and those who provide mate-

rials which are actually used in its construction, may be deprived of their respective liens thereon, by a previous suit and attachment, in favor of a party who has sold materials for the same ship, but which have never been used upon it.

It cannot be doubted, upon a true construction of the statute, that the lien provided thereby, can extend no further, than to be security for the price of the labor and materials actually expended upon the property to which it attaches.

About one-half of the iron which the plaintiffs sold and delivered to A. Scammons & Co., was incorporated into the vessel, and the balance thereof was otherwise used by the purchasers, and remained in the yard and was sold by the officer who had attached it; at the same time of the sale of the iron, the vessel was also sold by the officer, subject to all liens thereon, she then remaining unfinished upon the stocks. Subsequently, the plaintiffs instituted their suit, to secure and enforce their lien upon the vessel for the iron furnished by them. The defendant, as sheriff of the county of Hancock, made return upon the writ in that action of the attachment of the vessel; judgment was afterwards rendered in the action for the full price of all the iron delivered; an execution was issued on that judgment, and within thirty days after the rendition of the judgment, the vessel was duly demanded of the defendant that it might be taken and sold on the execution; and the defendant neglected to deliver the same. To recover damages for that neglect, this action is brought, the judgment remaining in no part satisfied.

The value of the iron, not used about the vessel, was merged in the judgment, and could not be separated from the value of the other portion. This was a waiver of the lien. *Bicknell* v. *Trickey*, 34 Maine, 373. The vessel having been previously sold to satisfy other debts, it could not be sold again, unless to enforce existing liens. Upon the delivery of the vessel, when demanded of the defendant, it could not have been legally sold upon the plaintiffs' execution; and they have lost nothing by his neglect. The law requires no useless cere-

mony, and the defendant was guilty of no omission of duty, for which the plaintiffs are entitled to damages.

*Plaintiffs nonsuit.*

HATHAWAY, APPLETON, MAY and GOODENOW, J. J., concurred.