### CHARLES PERKINS *versus* WILLIAM PIKE & *al.*

By the general maritime law, mechanics and material men have a lien on foreign, but not on domestic vessels, for labor and materials furnished by them, for the construction or repair of such vessels.

By the Revised Statutes of 1841, c. 125, § 35, laborers and material men have a similar lien on *all* vessels, domestic as well as foreign.

The equity of a lien claim arises from the fact that the labor and materials furnished have increased the value of the article to which they have been applied.

The general owner by mortgage, of property thus benefited, holds it equitably subject to a lien for what, by accession, has vested in himself, and enhanced the value of his interest in that of which it has become a part.

The lien *in rem*, attaches only to the extent of labor actually performed and materials used. It does not attach for labor or materials expected or agreed to be applied, but which, in fact, have not been.

When lien and non-lien claims are embraced in the same judgment, the lien is lost.

A lien is not secured by attachment in the usual form, on a writ simply commanding the officer to attach the goods and estate of the defendant therein named.

A. sued out a writ against B., commanding the attachment of the goods and estate of the debtor; the officer attached a vessel belonging to B., upon which a mortgage existed, and the mortgagee receipted for it; — *Held*, that the attachment being subsequent to the mortgage, and the writ containing no specific command to the officer to attach the vessel, to secure a lien claim, the rights of the mortgagee were superior to those of the lien creditor in the suit.

Where a writ gives no indication of a lien claim, an attachment confers on the plaintiff in the suit no special or peculiar rights in the property attached, by reason of his having furnished labor or materials for the construction or repair thereof. He stands on the same footing as any other creditor.

A practical difficulty in cases of lien, arises from the omission of the Legislature to require notice to all parties interested, as is the practice in admiralty. Without such notice, the judgment cannot bind other than the parties to the suit.

ON REPORT from *Nisi Prius*, HATHAWAY, J., presiding.

This was an action of ASSUMPSIT, brought by the plaintiff as deputy sheriff, upon a receipt given to him by the defendants for a vessel which he had attached in a certain suit, *Thomas Sawyer* v. *Michael McCurday*. The facts sufficiently appear in the opinion of the Court.

The defendants, in their specifications of defence, denied "any liabilities on account of the receipt sued in this action, because the plaintiff, acting as deputy sheriff, in the service of the writ in the case *Thomas Sawyer* v. *Michael McCurday*, made no legal attachment of the property; because the property purported to be attached in said action, and for which the receipt sued in this case was given, was not the property of the defendant Michael McCurday, or liable to be attached on the debt of the plaintiff Thomas Sawyer, but was the property of Wm. Pike." These specifications were filed under the law of 1855.

The plaintiff read the writ in the action, *Sawyer* v. *McCurday* and William Pike, trustee, based upon the following account annexed: —

"1854, Aug. 5.

Michael McCurday to Thomas Sawyer,   Dr.

| | |
|---|---|
| To 12,442 ft. pine deck plank, at 25, | $311 10 |
| " hauling same to planing shop, | 12 44 |
| Cash. | $323 54." |

The direction upon the writ was, "Mr. Officer, attach vessel to enforce plaintiff's lien for the within claim." The officer's return states, among other things, that he attached a vessel on the stocks, being built by said defendant, by order of the plaintiff's attorney, as the property of the defendant within named, to enforce lien for the within claim, and by direction of the plaintiff took William Pike and Levi L. Lowell as receiptors for the safe return and forthcoming of said property, &c., and on same day served process on defendant.

The plaintiff put into the case the judgment in the case of *Sawyer* v. *McCurday & Trustee*, and the execution issued thereon.

The officer's return upon the said execution, stated that he had that day notified the trustee, who had neglected and refused, &c.; and on same day notified the defendants in this action, and made a demand upon them for the property attached on the original writ, for which they had given the re-

ceipt, and that each of them refused and neglected to deliver the same, &c.

The defendants offered, and were allowed by the Court to read, subject to the objection of the plaintiff, a mortgage from McCurday & Harvell to William Pike, dated May 17, 1854, being prior to the commencement of the original suit, of a ship to be built by McCurday & Harvell. The condition of the mortgage was to pay advances and indebtedness according to a contract between the parties made Dec. 17, 1853. McCurday & Harvell to have possession unless they abandon. It was admitted that this mortgage was duly executed and properly recorded, and that the ship mentioned in it is the one referred to in the various depositions in this case.

Wm. Pike, one of the defendants, was defaulted at the opening of the trial.

If, upon the above stated facts, the Court be of opinion that the plaintiff's action can be maintained, then the defendant is to be defaulted; otherwise, a nonsuit is to be entered.

*Geo. W. Dyer,* for plaintiff.

1. The defendant Pike having been defaulted, we have only to consider the liability of Levi L. Lowell, the other defendant.

Lowell is liable, because he signed the receipt, and there has been a breach of that contract.

From the case, it would appear that Lowell defends upon the ground, that in the action of *Sawyer* v. *McCurday and William Pike, trustee,* the attachment of the ship receipted for was insufficient in form or invalid, because the ship was not the property of McCurday, but was the property of William Pike.

2. As to the form of the attachment.

The case finds, that in the attachment, all the forms of the statute were complied with; and it is submitted, that if this were not so, this defence could not be made by Lowell, as it could not have been made by the attaching officer, if the action had been against him, for not holding the ship to be taken on execution. *Haynes* v. *Small,* 22 Maine, 14.

3. The receipter takes the place of the officer, and has the same rights and is subject to the same liabilities. *Sawyer* v. *Mason*, 19 Maine, 49.

4. As to the property of McCurday in the ship.

Admitting, for the argument, that the mortgage of McCurday and Harvell to William Pike, was valid and subsisting at the date of the attachment, Sept. 15, 1854, then, by the provisions of the statute, McCurday had property in the ship, which was attached in that suit, where Pike was summoned as the trustee of McCurday.

It is however denied, that the mortgage to Pike was valid and subsisting at the date of the attachment, and it is submitted that, the case finding that the officer, having attached the ship in the possession of McCurday, the presumption of law is, that the ship was the property of McCurday, and the burthen of proof is upon Lowell to show affirmatively, that the property was not McCurday's. *Bradford* v. *McLellan*, 23 Maine, 302.

5. The case finds that the ship was mortgaged to William Pike by McCurday & Harvell, May 17, 1854, and was *"to be built."* The officer's return shows that Sept. 15, 1854, the ship was built by McCurday, and on the stocks.

It is submitted, that a mortgage of a ship before she is built, gives no rights as against Sawyer, and, so far as he was concerned, the ship was McCurday's.

The case does not find that Pike ever made any advances under the mortgage, or that there was any indebtedness to him, at the date of the attachment, from McCurday & Harvell, or either of them; and, so far as Sawyer is concerned, the case does not find that the mortgage was valid and subsisting at that time.

It is submitted, that by the principle decided in *Bradford* v. *McLellan*, 23 Maine, 302, Lowell must show the ownership of the ship to have been, Sept. 15, 1854, in Pike, or not in McCurday; and if in Pike, then by *Fisher* v. *Bartlett*, 8 Maine, 122, that the ship has been restored to Pike. *Lathrop* v. *Cook*, 14 Maine, 414.

*F. A. Pike,* for defendants.

1. The receipt in this case is peculiar. It does not allege the property attached to be McCurday's. It states purposely that the ship attached was "now being built in the shipyard of the defendant, Michael McCurday;" and was attached on a precept in favor of Sawyer against McCurday. It purposely avoids stating the ship to be McCurday's property. Neither of the defendants having acknowledged the property to be McCurday's, is precluded from setting up property in himself or another. In this particular, it is similar to the receipt in *Lathrop* v. *Cook,* 14 Maine, 416, of which Judge SHEPLEY says, "the defendant has not, by virtue of the receipt, disenabled himself to allege and prove it to have been his own property."

2. The mortgage being *prima facie* evidence of title, there was no need of further proof of indebtedness to the mortgagee. 18 Pick. 394.

3. The mortgage is of something more than "a ship to be built." It describes a vessel in frames at the time the instrument was executed, and that the materials of which she was to be composed were then in the yard. That a person cannot grant or mortgage property of which he is not possessed and to which he has no title, is an axiom of Lord BACON's which I am not disposed to controvert. But it is equally well established that a person may grant personal property of which he is potentially though not actually possessed. A man may grant all the wool which shall grow on the sheep which he owns at the time of the grant, but not the wool which shall grow on sheep not his, but which he may afterwards buy. *Lunn* v. *Thornton,* 1 Man. Grang. & Scott, 383. In *Macomber* v. *Parker,* 14 Pick. 497, the same principle is enforced. In *Abbot* v. *Goodwin,* 20 Maine, 408, it is carried still further, and applied to goods exchanged for goods mortgaged, a stretch of principle which is not needed to cover the case at bar. Certainly a mortgage on a colt will cover subsequent growth. A mortgage on a building partly finished will cover the erection in its completion. The finishing of

the article mortgaged is the "new act done by the donor for the avowed object and with the view of carrying the former grant or disposition into effect." *Lunn* v. *Thornton*, before cited.

At the time of the attachment, then, in September, 1854, Pike had a valid and subsisting mortgage upon the ship. Such being the case, McCurday had no attachable property in her. The law does not allow personal property under mortgage to be attached. The provision of the R. S., c. 117, § 40, allowing attachment, was repealed by c. 31, laws of 1842. It is liable to *seizure* on execution, but not to attachment.

4. The plaintiff had no lien claim on the ship.

5. If Pike shall be defaulted on the ground of breach of contract in not returning property receipted for, although the property was his own, still judgment can only be rendered against him for nominal damages. It can at most be but a technical breach of contract. Had the ship been returned to the officer in accordance with the contract, he could only have sold the individual interest of McCurday, after the payment of the partnership debts and the discharge of Pike's mortgage. It does not appear that this interest could have been of any value. As matter of fact it was entirely worthless. If of no value, Perkins would have been liable to Sawyer only for nominal damages in any event; even though he had neglected to levy the execution. The liability of the receiptor to the officer is measured by that of the officer to the creditor; it can never exceed it.

*Dyer*, for plaintiff, in reply.

APPLETON, J. — It appears from the proof, that, in December, 1853, one Michael McCurday, or McCurday & Harvell, made a contract with the defendant Pike, for supplies for a vessel then building. On May 7, 1854, they gave him a mortgage on the vessel then in frames, and of the materials then on hand, to secure him for supplies furnished and to be furnished. On August 5, 1854, Thomas Sawyer sold McCurday about twelve thousand feet of plank for the deck of the ves-

sel. On September 15th following, and when only a portion of the deck plank had been used, Sawyer commenced a suit against McCurday for all the deck plank, claiming a lien therefor, and attaching the vessel to secure the same, for which the defendants gave their receipt to the present plaintiff, by whom the attachment was made. Sawyer prosecuted his suit to final judgment, which was rendered in his favor for the amount in suit. The execution was seasonably placed in an officer's hands, and a demand duly made of the receiptors, who refused to give up the vessel.

This action is brought by the officer making the attachment, against the receiptors, one of whom, Pike, the mortgagee, denies Sawyer's lien upon the vessel, and claims to hold the same under his mortgage.

"According to the doctrine in the Pandects, if one repairs his vessel with another's materials, the property of the vessel remains in him." "The property in a vessel is supposed to follow the keel, *proprietas totius navis carinæ causam sequitur.*" 2 Kent, 360. The same doctrine seems to have been incorporated in and to be acknowledged as part of the common law. It is recognized in *Merritt* v. *Johnson,* 7 Johns. 473. It is fully affirmed in *Glover* v. *Austin,* 6 Pick. 214. The defendant Pike, having a valid mortgage, duly recorded, shows a good title against all but those having an elder or better title as lien claimants. His title, in point of time, is prior to that of Sawyer. The rights of the parties, therefore, depend upon the existing validity of Sawyer's lien at the time judgment was rendered in his favor.

By the general maritime law, mechanics and material men have a lien on foreign vessels for the price of their labor and materials; but not on domestic vessels. To extend further protection to the laborer and the material man, the Revised Statutes of this State, c. 125, § 35, give to those who perform labor or furnish materials for or on account of any vessel building or undergoing repairs, "a lien on such vessel for his wages or materials;" and this lien may be secured by an

attachment of the vessel within four days "after said vessel be launched or such repairs afterwards have been completed."

In the case at bar, one of the builders of the vessel, upon which the lien is claimed, had purchased of the plaintiff for the vessel, a quantity of deck plank, which had been delivered. At the date of the suit by the vendor for the price of the plank sold, but a small portion had been used in the vessel. The whole amount sold had not entered into the structure of the vessel, till some two or three months after the commencement of the suit by which the lien was to be enforced.

It remains to ascertain the extent of the vendor's lien at the time his suit to enforce it was commenced. Had Sawyer a lien at that time for all the plank sold, or only for those which had entered into and become a part of the vessel? Had he a lien because of the expectation on his part that they would, and of the promise on the part of the builder that they should, enter into and become a portion of the vessel then building? Did the lien attach instantly upon the sale, irrespective of any subsequent use or disposition of the plank?

It must be remembered in cases of this description, that the controversy is not so much between the vendor and vendee, as between the vendor and the mortgagee or general owner of the vessel, to the prejudice of whose interests the lien is asserted. The builder of the vessel was liable for the lumber, whatever may be the use he may have made of it. The judgment was rightfully rendered against him for the whole amount sold. Was the interest of the general owner liable for the same amount?

The plank were sold for the vessel. They had not then been applied to the purpose for which they were purchased. They might never be. They might be sold or used in building other vessels. Their future use was problematical. If they were used for other vessels, or sold, would a lien attach? It would certainly be a novel doctrine that a lien should attach for materials never used, because of an expectation that they would be used for a particular purpose.

The equity of a lien claim arises from the fact that the labor done, and the materials used, have increased the value of the thing upon which it has been done, and for which they have been used. The general owner, having been thus benefited, equitably holds his property subject to a lien for what by accession has vested in himself, and enhanced the value of his interest in that of which it has become a part.

The law follows and adopts this equity. The lien *in rem* attaches only to the extent of the labor done and the materials used; not for labor hereafter to be done, nor for materials hereafter to be applied. It cannot attach for labor which may never be performed, nor for materials which may never become a part of the vessel. Such was not the lien as to foreign vessels. That was only for labor done and materials used, and no more. The statute of this State was designed only to apply the maritime law to domestic vessels, for the same object and to the same extent. The *Young Mechanic*, 2 Curtis, 404; *The Kearsage*, 2 Curtis, 421; *Phillips* v. *Wright*, 5 Sandf. 342; *The Hull of a new Ship*, Daveis, 199.

It is apparent, therefore, that Sawyer sued and recovered judgment for materials for which, at the time he instituted his suit, he had no lien. If the mortgagee had wished to relieve the vessel from the attachment, he would have been obliged to pay for only such lumber as had then been used. The lien of the material man can only be enforced by attachment. It cannot be asserted prospectively. The extent of Sawyer's lien was limited by the materials used, and not by those which might or might not be used. The judgment, therefore, manifestly embraces lumber for which a valid lien *then* existed, and lumber for which there was then no lien. In such case it has been repeatedly held that the lien is lost. *Bicknell* v. *Trickey*, 34 Maine, 273; *McCrillis* v. *Wilson*, 34 Maine, 286; *Pearsons* v. *Tinker*, 36 Maine, 384.

But a fatal objection to the plaintiff's claim arises from the fact that the writ, by virtue of which the attachment was originally made, and the receipt taken, commanded only the attachment of the goods and estate of the debtor therein nam-

ed. There was nothing indicating a lien claim. The attachment, therefore, could give the plaintiff in that suit no special or peculiar rights, by reason of any materials he may have furnished toward the building of the vessel. He stands on the same footing as any other creditor, and his rights must be postponed to those of the mortgagee.

The practical difficulty, in cases of lien by statute, arises from the omission on the part of the Legislature to make provision for notice to all persons interested, so that the judgment rendered shall be conclusive upon all. In admiralty, the process is *in rem*, and notice being given, the judgment binds the rights of all. Until provision is made for general notice, the judgment may conclude the parties to the suit, but it cannot bind others.

The attachment being subsequent in time to the mortgage, and the writ containing no command authorizing the officer specifically to attach the vessel, the rights of the mortgagee, as here presented, are superior to those of the creditor in the suit in which the attachment was made, and a nonsuit must be entered. *Plaintiff nonsuit.*

TENNEY, C. J., concurred in the result. HATHAWAY and GOODENOW, J. J., concurred.