In Equity.

## The Fletcher, Crowell Company

*vs.*

## Ovide Chevalier et als.

Androscoggin.    Opinion November 22, 1911.

*Liens.   Materials Furnished but not used.   Materials Furnished, Used, and After-wards Taken Out.   Mass. Statute, 1902, chapter 197, section 1.
Revised Statutes, chapter 93, section 29.*

There is no lien under Revised Statutes, chapter 93, section 29, for materials furnished for a building but not used in the construction of the building.

Where two steel columns were made in accordance with the specifications for a building and were actually set up in the building by the contractors, and afterwards they were removed at the request of the building committee, *held*, that the columns were in fact incorporated into the building and became a part of the realty and that the lien created by Revised Statutes, chapter 93, section 29, was not defeated by the removal of the columns.

On report.    Judgment for plaintiff as stated in the mandate.

Bill in equity to enforce a mechanic's lien for materials alleged to have been furnished in the construction of a certain building in Lewiston.

The case is stated in the opinion.

*George C. Wing, and George C. Wing, Jr.*, for plaintiff.
*McGillicuddy & Morey*, for owner of the building.

Sitting :   Whitehouse,  C.  J.,  Savage,  Spear,  Cornish,  Bird, Haley, JJ.

Whitehouse,  C. J.    In this suit the plaintiff seeks to enforce a mechanic's lien for materials alleged to have been furnished to the defendants Chevalier and Ducharme in the construction of a build-

ing which they had contracted to erect for the defendant L'Union Musicale, the owner of the land, and for which they had agreed to provide all the materials and perform all the work.

This case with three others against the same defendants, was referred to Mr. Justice SAVAGE for determination. Upon his report a final disposition was made of the other three cases, the one at bar being the only case for the consideration of the court. By agreement of the parties this case was "reported to the Law Court to determine for what amount this plaintiff has a lien upon the land and building described in its bill upon the facts stated in the referee's report, and to direct judgment accordingly."

The referee's report discloses the following facts and conclusions respecting the case at bar.

"The Fletcher, Crowell Company contracted with Chevalier and Ducharme to deliver on cars at Lewiston all the iron or steel work described in the account annexed to their bill. in equity. It was all shipped at different times by railroad to Lewiston. Some of it consisted of special castings, made specially for this building, and not fitted to any other. Some of it was taken by Chevalier and Ducharme to the site of the building and some of it still remains in the possession of the railroad company. A part of the steel was used in the construction of the building.

"After the building was partly constructed, owing to a heavy rain storm and washout, a portion of the building settled, and required a rebuilding to some extent. The owners and the contractors disagreed as to which party the loss or damage should fall upon. The contractors were willing to stand a portion, but not all of the expense of rebuilding the damaged portion. Thereupon, L'Union Musicale prevented the contractors from going on with their work, under the existing conditions, as to rebuilding."

"Afterwards the plans of the building were remodeled, and the building was built one story lower than was at first contemplated. Owing to the change some of the lumber furnished by Richardson, Dana & Co. and some of the special castings and other steel furnished by the Fletcher, Crowell Company were not needed and were not used. But the owner completed the building on its own account

and used some of the Richardson, Dana & Co. lumber and some of the Fletcher, Crowell Company steel in the construction. For this lumber and steel the owner does not object to paying or to having liens adjudged."

"The contractors, after they ceased working, notified the Fletcher, Crowell Company that they found themselves unable to continue the work, and directed that company to order the iron then in the possession of the railroad company to be reshipped. This was not done."

"A particular controversy exists as to two columns, ordered of, and shipped by The Fletcher, Crowell Company. They were made in accordance with the specifications and were actually set up in the building by the contractors. Later they were removed at the request of the building committee of L'Union Musicale, it being claimed that the columns had not been properly set."

"As to the claim of the Fletcher, Crowell Company, I find that this plaintiff under its contract with Chevalier and Ducharme furnished materials for the erection of the building to the amount of $2,025.90. Of this, materials to the amount of $1,720.60 were never used in the construction of the building, at any time, in any way. Two steel columns, for which $140 is charged, were set in the building, and afterwards removed, as already stated. Materials to the amount of $165.30 were used in the erection of the building, and remain in it."

"In the Fletcher, Crowell Co., I report the facts as above stated, for the judgment of the court, on the law involved."

"If the court is of opinion that The Fletcher, Crowell Company has a lien for all the materials furnished for the erection of the building, whether used or unused, I award that it shall have a personal judgment and judgment for a lien upon the land and building described in its bill, with costs, each in the sum of $2,025.90 with interest from September 21, 1910. If, however, the court is of opinion that the plaintiff has no liens for materials which did not enter into the construction of the building, and become a part of it, then I award that its lien judgment aforesaid shall be for the sum of

$305.30 or $165.30 only, with interest and costs as stated, according as the court determines that the plaintiff has, or. has not, a lien for the two columns, set in the building and afterwards removed, as already stated."

Upon the facts thus reported two questions are presented for the determination of this court; first, whether the plaintiff is entitled to a lien for materials furnished to the amount of $1720.60, "which were never used in the construction of the building at any time in any way;" and second, whether the plaintiff is entitled to a lien for the item of $140 for the two iron columns that were set in the building and afterwards taken out by order of L'Union Musicale.

It is provided by section 29 of chapter 93 of the Revised Statutes that "whoever performs labor or furnishes labor or materials in erecting, altering, moving or repairing a house, building or appurtenances . . . . by virtue of a contract with or by consent of the owner, has a lien thereon and on the land on which it stands . . . . to secure payment thereof with costs."

Whether it is necessary to prove that the materials furnished were actually incorporated in the building in order to create a lien upon it under the above statute and others having substantially the same tenor and purpose, is a question not entirely free from difficulty and one with respect to which courts of equal respectability have reached different conclusions.

Many of the earlier cases upon the subject are collected and considered in Am. & Eng. Annotated Cases, vol. 13, page 11, in a note to *Central Lumber Company* v. *Braddock Land & G. Co.*, 84 Ark. 560. In the principal case it was held that, under a statute authorizing a mechanic's lien for the value of material furnished "for any building" the materials furnished must be actually used in its construction before the lien can attach." In the note Maine is placed in the category of fifteen states that have adopted this rule, but an equal number of states are cited in support of the contrary view, that the lien exists as to all materials furnished in good faith whether they actually become part of the structure or not. In Vol. 19 of the "Annotated Cases," page 588, it is said in the note to

the principal case that "the recent cases indicate a tendency of the courts to hold that the lien does not exist unless the materials were actually used in the erection of the building.

In support of this statement the following cases are cited : *Potter Mfg. Co.* v. *Meyer*, 171 Ind. 513, 86 N. E. 837 ; *Niagara Oil Co.* v. *McBee*, 91 N. E. 250 ; *Gilbert Hunt Co.* v. *Parry*, 110 Pac. 541 (Wash. 1910) ; *U. S. Water Co.* v. *S. S. Realty Co.*, 133 S. W. 371. Although the earlier cases in Indiana generally upheld the doctrine that the materials need not be actually used in the building, the court in that state in the recent case of *Potter Mfg. Co.* v. *Meyer*, supra, distinctly appears to have adopted the opposite rule. In the opinion it is said : "It is well settled both in this state and elsewhere that a materialman claiming a lien must ordinarily show that his materials were furnished for and were actually used in the erection of the building against which the lien is asserted."

The reasons for this rule and the warrant for placing Maine in the category of states that have adopted it, are illustrated and stated in the following cases :

In *Lambard* v. *Pike*, 33 Maine, 141, in speaking of a stove and funnel, the court said : "If placed in the mill it would be but a fixture used for its comfortable occupation. To create a lien the materials must be used for erecting, altering or repairing the building ; must be so applied as to constitute a part of the building." In *Ames* v. *Dyer*, 41 Maine, 397, in support of the conclusion that the moulds of a vessel cannot be regarded as a part of the materials with which it is constructed, the court cited *Phillips* v. *Wright*, 5 Sandf. 342, and quoted from the opinion as follows : "The whole theory of a lien for labor and materials rests upon the basis that such labor and materials have entered into and contributed to the production or equipment of the thing upon which the lien is impressed." . . . Can it be said that the materials are furnished for and towards building a ship when no part of them enters into or becomes a part of the ship?" In *Taggard* v. *Buckmore*, 42 Maine, 77, it was held that materials sold by one party to another upon representation that they would be wrought into a

vessel which was in process of construction by him, but which were not so used, would not create a lien on the vessel. In the opinion the court said : "The principle embraced in the statute is founded in natural justice, that the party who has enhanced the value of the property by incorporating therein his labor or materials shall have security on the same though changed in form and inseparable from all property. But justice does not require that he should be allowed the security in the same property for the price of materials which became no part thereof." See also *Baker* v. *Fessenden*, in which it was held that the statute will not give a lien on a mill for labor performed in repairing machinery, "unless it was done on some portion of the realty," and *Hanson* v. *Publishing Co.*, 97 Maine, 102, in which the underlying principle of the statute as set forth in the foregoing cases, was reaffirmed by the statement in the opinion that "a lien is given upon the ground that the work has been a benefit to the realty, and has enhanced its value."

It is true that the facts in these cases differ so materially from those at bar that the decisions are not authoritative precedents in support of the defendant's contention in this case ; but they unmistakably indicate the trend of the judicial thought upon the question in this State.

In *Chapin* v. *Persse*, 30 Conn. 472, the court said : "The theory of the lien is, that the party furnishing materials for the erection or the repair of buildings on credit retains his claim to them after they have gone into the building, and to enable him to enforce it his lien is spread over all the property with which the materials have become inseparably connected. Hence he is given a lien upon the whole building and the land on which it stands. But to give a lien for all the material sold for the purpose of going into the building, irrespective of the actual use of it for that purpose, might have the effect of creating a lien to the full value of the building, and the land on which it stands, in favor of parties whose property did not in fact any of it go into the building, and thus the persons who had in fact erected or repaired the building, or who had done work upon it, would be deprived of any advantage from the liens given them by the statute. Such surely ought not to be,

and as we believe was never intended to be, the result in any case. We think, therefore, that to entitle the furnisher of the materials to a lien, his property must not only be furnished for the erection or the repair of a building, but must actually go into the building and be used for that purpose."

In *Sweet* v. *James*, 2 R. I. 270, it was held that "whatever may be the condition of the materials furnished, whether very rough or perfectly adapted to their purpose. . . . and from whomsoever they may have been originally purchased, and although kept by the contractor as merchandise, his lien is not affected by these considerations, provided only they are incorporated in the work contracted for." So in *Hinckley & Egery Iron Co:* v. *James*, 51 Vt. 240, it was held that a mechanic's lien covers only such of the materials furnished as are attached to the realty so as to be a part of it at the time the memorandum required by statute is filed in the town clerk's office."

In Massachusetts it is expressly provided by statute that a person has a lien for "materials furnished and actually used" in the erection of the building." Rev. Laws, 1902, Vol. 2, chap. 197, section 1.

See also *Smalley* v. *Gearing*, 121 Mich. 190, 79 N. W. 1114; *North* v. *Globe Fence Co.*, 144 Mich. 557, 108 N. W. 285; *Dearborn* v. *Everhartt*, 74 Mo. 37; *McConnell* v. *Hewes*, 50 W. Va. 33, 40 S. E. 436; *Hill* v. *Bowers*, 45 Kan. 592, 26 Pac. 13; *Ryndak* v. *Seawell*, 13 Okla. 737; *Fitch* v. *Howett*, 32 Ore. 396, 52 Pac. 192; *Silvester* v. *Col. Quartz Mine Co.*, 80 Cal. 513, 22 Pac. 217; *McAnally* v. *Hawkins Lumber Co.*, 109 Ala. 397, 19 So. 417; *Wardlaw* v. *Troy Oil Mill*, 74 S. C. 368, 53 S. E. 658.

The principles of equitable estoppel are not applicable to the facts of this case.

It is accordingly the opinion of this court that the plaintiff is not entitled to a lien on the land and building for the materials furnished to the amount of $1720.60, which were not used in the construction of the building, but for a personal judgment only against the contractors.

With respect to the "particular controversy" in regard to the two steel columns, valued at $140, it appears from the findings of the referee that "they were made in accordance with the specifications and were actually set up in the building by the contractors," and that "later they were removed at the request of the building committee of the L'Union Musicale, it being claimed that the columns had not been properly set." There is no finding, however, that these columns were not in fact properly set in the building, or that they were not of suitable quality and dimensions and perfectly adapted to the purpose for which they were designed. They were in fact incorporated into the building and became a part of the realty. But it appears from the findings of the referee that after the building settled, "the plans were remodeled, and the building was constructed one story lower than was at first contemplated." For aught that appears these columns were "a benefit to the building and enhanced its value" as it was constructed under the original plans. But they were removed by the owner, and so far as appears without the consent of either the contractors or the plaintiff, and without any failure of duty in that respect on the part of the plaintiff. The lien to which the plaintiff was entitled when the columns became a part of the realty, was not thereby defeated.

The conclusion therefore is that the certificate must be,

*Personal judgment for the plaintiff for $1720.60, with interest from September 21, 1910, against the defendants Chevalier and Ducharme only.*

*Judgment for the plaintiff against Chevalier and Ducharme for $305.30 with interest thereon from September 21, 1910, and a lien therefor on the land and building described in the writ.*