FRANK S. CARPENTER, IN HIS CAPACITY AS
TREASURER OF THE STATE OF MAINE

*vs.*

PAUL E. SUSI, FRANK T. SUSI,
GUY SUSI D/B/A P. E. SUSI & CO. AND
HARTFORD ACCIDENT & INDEMNITY CO.

Androscoggin.   Opinion, March 5, 1956.

*John G. Marshall,* for plaintiff.

*Dubord & Dubord,* for defendant for Susi.
*Locke, Campbell, Reid & Hebert,*
for Hartford Accident Indemnity Co.

SITTING: FELLOWS, C. J., WILLIAMSON, WEBBER, BELIVEAU, TAPLEY, CLARKE, JJ.

WILLIAMSON, J.   This action of debt against the surety on a highway construction bond is before us on general motion of the defendant for a new trial.   The Treasurer of State brought the action on behalf of Snow's, Inc., the supplier, to recover a balance claimed upon an account for tires, tubes, and vulcanizing and retreading services against the P. E. Susi & Co. firm, the contractor, in connection with a highway project in Troy.   The plaintiff dismissed the case against the contractor by reason of bankruptcy.   The jury assessed damages at the penal sum of the bond and estimated the supplier's damage at $4150.00.

There are two main questions.   The first concerns the coverage of the bond, and the second, whether the claim is within such coverage.

The sufficiency of the charge of the presiding justice is not in issue.   No exceptions were taken, and indeed the charge is not printed with the record.   Under the familiar rule we assume that the case was submitted under proper instructions.   *First Nat'l Bank* v. *Morong et al,* 146 Me. 430, 82 A. (2nd) 98 (1951) ; *Frye, Lounsbury* v. *Kenney,* 136 Me. 112, 3 A. (2nd) 433 (1939) ; *Archibald* v. *Queen Insurance Company,* 115 Me. 564, 99 A. 771 (1917).   We are called upon to determine the correct rule governing the construction of the bond and to measure the jury verdict by the rule so determined.

In 1952 the State Highway Commission awarded two separate construction contracts to the Susi firm; the first, for a highway in Oakland and Smithfield known as the Oakland project, and the second for a highway in Troy known as the Troy project. The contractor carried on the work on both projects at about the same time. The Oakland project was commenced in November 1952 and completed in December 1953. The Troy project ran from August to December 1952, and from May to November 1953. During the progress of the Troy project the supplier sold the tires and tubes and performed the vulcanizing and retreading set forth in the account. The defendant surety does not question the items or charges against the contractor.

The issue is limited to the extent of defendant's liability under the statutory bond in favor of the Treasurer of State given by the contractor and the surety for the Troy project.

The pertinent part of the statute reads:

> "The commission shall have full power in all matters relating to the furnishing of bonds by the successful bidders for the completion of their work and fulfilling of their contracts, and for the protection of the state and town from all liability arising from damage or injury to persons or property." R. S., c. 20, § 21 (1944), now R. S., c. 23, § 40 (1954).

The bond provides that the principal ". . . shall faithfully perform the contract on his part, and satisfy all claims and demands incurred for the same and shall pay all bills for labor, material, equipment, and for all other things contracted for or used by him in connection with the work contemplated by said contract, and shall fully reimburse the obligee for all outlay and expense which the obligee may incur in making good any default of said Principal, . ." The specifications incorporated by reference and made a

part of the contract, and in turn a part of the bond, read in part as follows:

"Requirements of Contract Bond. 'The successful Bidder, at the time of the execution of the contract, must furnish a bond payable to the Treasurer of the State of Maine, or his successors in office, in the sum of seventy-five (75) per cent of the amount of the contract awarded, in case a surety company bond is provided, or fifty (50) per cent of the amount of the contract awarded if a certified check or other security is provided, as noted below. The form of bond shall be that provided by the Commission and the Surety shall be acceptable to the Commission. This bond shall guarantee due execution and faithful performance and completion of the work to be done under the contract, and the payment in full of all bills and accounts for material and labor used in the work, and for all other things contracted for or used in connection with the contract; the contract shall not be considered in force until such bond has been filed and accepted by the Commission. . .' "

"Responsibility for Damage Claims. '. . . The Contractor shall promptly pay all bills for labor, materials, machinery, board of workmen, water, tools, equipment, teams, trucks, automobiles, freight, fuel, light and power and for all other things, contracted for or used by him on account of the work herein contemplated, and if at any time during the progress of the work or before final payment of any money due the Contractor under the terms of this contract, any claim for labor, materials, board of workmen, water, tools, equipment, teams, trucks, automobiles, freight, fuel, light and power, or for any other things specified as aforesaid, or for damages by reason of any acts, omissions or neglect of said Contractor in the prosecution of the work, shall be presented to said Commission, the Commission may retain such sum or sums from the moneys due the Contractor under this contract as would be necessary to discharge all such claims whether for labor or

materials or for damages as aforesaid, and until the validity of such claims shall be established and finally determined, and if determined and finally established as valid, all such claims shall be paid from the amount so retained if it be sufficient for that purpose; otherwise, or if at any time the Commission shall be satisfied that any of such claims are invalid and groundless, any amount so retained shall be paid to said Contractor, or in case of default of contract to the contractor's surety, and neither the said Commission nor any member thereof shall be liable to any individual, firm or corporation making such claim for failure or refusal to hold and retain any money due under this contract for the purpose of payment of such claim. . .' "

In support of its motion the defendant bonding company in substance contends: (1) that claims for repairs or replacements of contractor's equipment are not covered by the bond; (2) that tires and tubes adding to the value of the equipment and making it available for future work after the completion of the contract are not covered; and (3) that in any event there can be recovery for repairs and parts required in use of the contractor's regular equipment if, and only if, the items were consumed in the course of the particular contract.

The plaintiff on its part argues that the tires and tubes and other items were "contracted for or used by (the contractor) in connection with the work contemplated. . ." Consumption in this view is not required.

The precise question has not been determined in our court. Two cases in which the provisions of a like bond have been considered are *Foster* v. *Kerr and Houston*, 133 Me. 389, 179 A. 217 (1935) and *McFarland* v. *Rogers*, 134 Me. 228, 184 A. 391 (1936). In *Foster* the court held that the bond covered certain suppliers who furnished labor or materials to the contractor for use in the construction of a

highway bridge. The bond was given under a statute like that now in effect, and the contract provisions stated in the opinion closely parallel the present contract. The court, in construing the bond, said at page 395: ". . that a bonding company, agreeing for a consideration is a surety, and that its guaranty is not to be interpreted under the rule *strictissimi juris*." And again, quoting with approval from 21 R. C. L. 1160, ". . because it is essentially an insurance against risk, underwritten for a money consideration by a corporation adopting such business for its own profit, the contract will be construed most strongly against the surety and in favor of the indemnity which the obligee has reasonable grounds to expect."

In *McFarland* the surety on a contractor's bond running to a municipality was held liable for unpaid premiums on public liability and workmen's compensation insurance which were required by the specifications forming a part of the contract. The court said, at page 231:

> "Though of course we can not import into a bond an obligation not covered by its terms, yet the rule is laid down in (the Foster case), that the liability of a bonding company, agreeing for a consideration to act as surety, is not to be measured by the rule of *strictissimi juris*. Such an agreement will be construed most strongly against the surety."

The surety urges that the liberal construction rule should be tempered since the bond was drafted by the State and not by the bonding company, and hence a chief reason for the rule does not exist. The point, however, is not open to the surety. It was decided otherwise under like conditions in *Foster* and reaffirmed in *McFarland*.

From our study of the bond in light of the statutes, and the contract including the specifications, and having in mind the purposes for which it was intended, we conclude that

items of the nature described in the claim before us are covered by the bond if, and only if, they are substantially consumed in connection with the contract. In other words, the surety is obligated to pay such claims when substantial consumption in the construction of the particular highway project is proved.

Under the contract for the Troy project the contractor "agrees to supply all equipment, appliances, tools, labor and materials and to perform all work required for the construction and completion of" the project. In the specifications, which form part of the contract referred to in the bond, and in the bond we find provisions relating to payment of claims of third persons. See *McFarland* case, *supra*.

When the contract and bond were executed, the State, the contractor and the surety without question contemplated that the contractor had equipment in general adequate for the performance of the contract and that with ordinary wear and tear on equipment, repairs and replacements would become necessary in the progress of the work. The usefulness of equipment—its life—would depend not alone upon its condition at the outset, but upon the manner and conditions of its employment. Tires and tire repairs are no exception to the general rule.

The surety enters the picture, among other important reasons, to protect those who are not paid for items which within the contemplation of the parties are fairly chargeable to the project. The language of the bond and the contract with the specifications is designed to give a broad protection to suppliers such as Snow's, Inc., but there are limits to be placed upon the responsibility of the surety.

Strictly we could say, for example, that "equipment" includes a truck or bulldozer of great cost and with a useful life far beyond the project at hand. And "all other things"

opens a new field of items for consideration. It readily could be said that a truck or bulldozer or some "other thing(s)" was "contracted for or used by (the contractor) in connection with the work contemplated by said contract." The statement, however, would tell only part of the story without the inclusion of the expected use in future work. In our view such a construction would be unreasonable and we would place such items beyond the coverage of the bond if they are not within the substantial consumption rule.

At the other extreme are repairs and replacements of a minor or incidental character, necessary from time to time in the maintenance of construction equipment. Such items obviously add to the useful life of the equipment, but they are in a sense absorbed in it. The cost in ordinary experience would be charged to current expense and would not be considered an addition to the equipment. Items of this nature in our view are covered by the bond. Whether we classify the items as "material," "equipment," or "other things" does not alter the conclusion. The charges for vulcanizing and retreading of tires reasonably fall within this class of items.

Tires and tubes present a different problem. They have neither the life of the truck, nor the incidental characteristics of the vulcanizing and retreading services. It is entirely possible that in fact the tires may be totally consumed, or substantially consumed, or only slightly used in connection with the project. If the tires and tubes are totally consumed, it is reasonable that their cost be covered by the bond. The total estimated expense of such items must, or in any event is intended to be, included in the contract price of the project. Nor does it seem improper that if such items are substantially consumed in the project the cost should likewise be covered. We do not expect mathematical certainty in a matter of this nature. There is, however, no inherent difficulty in ascertaining the fact of use

of the tire and whether it has more than a residual value at the end of the project.

Under the plaintiff's theory, the surety is obligated to pay for tires placed upon a truck the day before construction is completed under the contract, or more broadly stated, the extent of use on the project is not material and liability exists, although the useful life of the tires is in fact untouched, or only slightly so. Such an interpretation is not however required by the language used.

The coverage of the bond is limited to obligations arising under the particular contract. The surety for the Troy project has no interest thereby in the Oakland project. The fact that the surety on the Troy bond may also be the surety on the Oakland bond does not affect the case. The projects are separate and distinct. The supplier of equipment or "things" with a useful life beyond the particular contract, as here the Troy contract, has no sound reason for protection. If he were covered under such circumstances, the necessary result would be that the surety guarantees payment for equipment not used on the project for which he was surety, but on another project not within the bond.

The rule at first reading may seem to work a hardship upon the supplier. Certainly he cannot prove his case by showing that the item was contracted for or used in connection with the project, taking the words with literal exactness. It becomes necessary for him to establish substantial consumption, and the proof will vary with the type of item. As we have indicated, incidental and minor repairs and replacements will give no trouble. In the case of tires, however, with ordinarily a substantial life, the determination of the fact may raise problems of some difficulty.

A tire need not lose its identity. Its history may be recorded with data of when and where it was in use and its condition. Such records for obvious reasons will be kept,

if at all, by the contractor and they may not be readily available to the supplier at trial. The amount involved in a claim of this nature is not small. The cost of a tire is an item of consequence. In the aggregate the items claimed by the supplier in this instance reach over $5,000 in a highway project with a contract cost of $288,000. Insignificance of amount certainly is no excuse for lack of maintenance of adequate data by the contractor either for his own purposes or at the insistence of the supplier.

The soundness of the substantial consumption rule, however, is not overborne by the difficulty of proof thereby placed upon the supplier. It would be far simpler, and indeed present no problem whatsoever, if on the purchase of a tire for use on the Troy project, or upon the delivery of a tire at the project, the liability of the surety, in the event the contractor failed to pay, had become at once established. We must not forget that apart from the statutory bond the supplier would have no claim whatsoever against anyone other than the contractor. In other words, the supplier gains vital security provided his claim is within the bond.

Further, the bond is required not alone for the benefit of the third persons, as the laborer and here the supplier, but for the benefit of the State to secure compliance with the particular highway construction contract. If the words "contracted for or used in" are taken literally, then the bond would cover the items here in issue, together no doubt with many others of like nature. Claims for labor, for materials unquestionably entering in the construction of the highway, gravel for example, might well be required to share ratably the coverage of the bond. The seller of a bulldozer, used once on a project, and the seller of tires with a useful life remaining after the completion of the contract, would thus gain a like protection with the laborer and the supplier of gravel. To compel the latter to share a loss with

the former in our view would be inequitable, and not required by the language of the bond.

Under the bond the supplier does not acquire a lien, but the protection afforded by the bond is not unlike that of a lien. The reasons underlying a mechanics' lien and a highway construction bond have much in common. On turning to the mechanics' lien we daily see difficult problems of proof placed upon the moving party. For example, the dealer must establish apart from other considerations that lumber was used in the construction of the house on which he seeks to establish a lien. The lumber must constitute part of the building. Delivery at the site is not enough under our law. If the builder to whom the lumber is sold is constructing many houses, the problems of proof of actual use are multiplied. On liens see R. S., c. 178, § 34 (1954); *Marshall* v. *Mathieu et al.,* 143 Me. 167, 57 A. (2nd) 400 (1948); *Fletcher, Crowell Co.* v. *Chevalier,* 108 Me. 435, 81 A. 578 (1911); *Taggard* v. *Buckmore,* 42 Me. 77 (1856); *Perkins* v. *Pike,* 42 Me. 141 (1856); 57 C. J. S. Mechanics' Liens, §§ 43, 44; 36 Am. Jur. Mechanics' Liens, § 72.

The situation in the case at bar is analogous to that of the lumber dealer. "Substantial consumption"—"the actual use" of a lien—must be proved by the supplier if he would hold the surety. In our opinion, as we have stated, the supplier is protected by the bond to the extent that the tires and tubes in question were substantially consumed in the Troy project.

The underlying reasons for the "substantial consumption" rule are discussed at length in *Clifton* v. *Norden,* 177 Minn. 288, 226 N. W. 940, 67 A. L. R. 1227 (1929), involving repairs and tires for motortrucks under a bond covering "tools, machinery, or materials." The court said, at page 942:

> "Tires of motortrucks are parts of the complete machine which on principle may or may not be

> chargeable against the bondsmen, according as there is or is not proof that they were consumed on the particular contract. . . . In the absence of proof that they were at least substantially consumed. . . there can be no recovery for such things as. . . tires."

See also Anno. 67 A. L. R. 1232; 43 Am. Jur., Public Works and Contracts, §§ 185, 186. Other cases of interest which must be read in light of differences in provisions of statutes, bonds, and contracts are: *Margulies* v. *Ogdie* (S. D.) 10 N. W. (2nd) 513 (1943) ; *Western Material Co.* v. *Enke* (S. D.) 228 N. W. 385 (1929) ; *Dennis* v. *Enke* (S. D.) 224 N. W. 925 (1929) ; *State* v. *Metropolitan Casualty Ins. Co. of New York* (Ore.) 26P (2nd) 1094 (1933) ; *United States* v. *Ambursen Dam Co.* (Cal.) 3 F. Suppl. 548 (1933).

We now apply the rule, which we must assume was given to the jury, to the evidence. It is not necessary to rehearse the evidence in detail. From the evidence of a partner in the Susi firm, it appears in some instances at least, that wherever the tires were delivered (1) they were placed on vehicles used interchangeably on the Troy and Oakland projects some 30 miles apart, or (2) were not substantially consumed on the Troy project. Other than a statement by the partner to the general effect that tires did not last long in such work, there was no evidence upon the life of the tires either in particular or in general. The evidence on the whole lacks the certainty required in finding a fact. Granted the tires were used on the Troy project within the contemplation of the parties, the evidence goes no further. It is purely guess or conjecture on the evidence in the present record whether the tires were substantially consumed on the Troy project, or on both projects, or had a useful life at the end of the Troy project.

The weight of the evidence is against the fact of substantial consumption of the tires and tubes on the Troy

project. We do not attempt to separate the vulcanizing and retreading items from the long account.

The entry will be

*Motion for new trial granted.*