FRANK S. CARPENTER
*vs.*
SEABOARD ENGINEERING CO., INC.
AND
U. S. FIDELITY AND GUARANTY CO.

Kennebec.    Opinion, July 27, 1962.

*Stanley Bird,* for the plaintiff.

*Shur, Sawyer, and Beryer,* for the defendant.

SITTING: WILLIAMSON, C. J., WEBBER, TAPLEY, SULLIVAN, SIDDALL, JJ.   DUBORD, J., did not sit.

SULLIVAN, J.   Seaboard Engineering Co., Inc., covenanted in writing with the State of Maine to construct a section of public highway and in guarantee thereof gave the State its bond with United States Fidelity and Guaranty as surety.

Seaboard Co. subcontracted with Aaron Construction Co. which on its part rented road making equipment from Lee Brothers and utilized such contrivances in the highway building. Lee Brothers remain unpaid by Aaron Co. for the rentals and the State for Lee Brothers has in this action sued Seaboard Co. and the Guaranty Company to exact payment.

There was a jury trial and evidence which, if believed, established that Lee Brothers for several days let to Aaron Co. one 605 Koehring Shovel to move earth and rock upon the road project, 2 Letourneau - Westinghouse, Tournapull, rear dump units for moving heavy earth and an International bulldozer, model TD24 and that Aaron Co. put the equipment to use on the road project. There were charges for wrecker service, repairs, moving and grease.

The presiding justice at the close of evidence instructed the jury as follows:

"While the contract, the bond and certain papers will go with you to the jury room I would say to you that under the wording of the bond in this case we are limited considerably in our application of the bond to the facts. While the bond, you will find, in general terms guarantees that Seaboard Engineering Company will pay for all labor, materials and so forth, connected with this job, I will have to say to you that we are here governed by the following interpretation of that contract, namely, that Seaboard and the surety company, the bondsmen, will be responsible to Lee Brothers only for such items as Lee Brothers supply, which items were substantially consumed - - in this operation.

"It is easy to understand that in the building of a road, cement, gravel, fill for shoulders, crushed rock, and so forth, do become incorporated, built into the road, substantially consumed or entirely consumed in the construction, but when we consider the equipment we are dealing with such as

bulldozers, power shovels, and so forth, the question of whether they are substantially consumed is a horse of another color, so to speak.

"So for our purposes the only item in the bill which is presented by Lee Brothers for our consideration which, as the record stands, can fall within the category of being substantially consumed is the 105 pounds of grease."

Plaintiff's counsel at the end of the court's instructions excepted in these words:

"I object to the Charge of the Court when he stated that Seaboard and the surety company were only liable for such items as were substantially consumed on the project. I further object to the statement that the only item on the bill, which as the record now stands, is the question of the 105 pounds of grease - - - -"

The jury returned a verdict for the plaintiff in the amount of $19.84, for the grease and special findings as follows:

*"Special Findings*

"1.   What was the fair rental value per month of a #605 Koehring Shovel during the period September 8 - October 23, 1959?

*Twenty Six Hundred Per Month*

"2.   What was the fair rental value of a Letourneau - Westinghouse rear dump vehicle, otherwise known as an earth mover, otherwise known as a Tournapull, per month for the same period?

*Fifteen Hundred & Seventy Two Per Month*

"3.   What was the fair rental value per hour of a TD 24 (bulldozer with operator) during the period September 14 to October 23, 1959?

*Eighteen Dollars Per Hr."*

Plaintiff thereupon appealed and states the issue here to be:

> "Are mechanical labor or equipment charges recoverable by the Treasurer of the State of Maine for the use of equipment owner against a prime contractor and its bonding company under the terms of a State Highway contract and its accompanying bond?

In the order of logic as well as in the contemplation of law the expressed intention of the State of Maine and of the defendants is the prime object of our consideration and judicial concern, in the interpretation of the highway contract and bond.

> " - - - Actual intention, as expressed in the writing, is the chief thing to be looked to and ascertained - - -"

*Seed Co.* v. *Trust Co.*, 130 Me. 69, 71.

The sanctioning statute basic to the relations of the parties in this action reads in pertinent respect as follows:

> "The commission (State Highway Commission) shall have full power in the letting of all contracts for the construction of all state highways - - - The commission shall make all - - - specifications and contracts for all proposed work - - - The commission shall have full power in all matters relating to the furnishing of bonds by the successful bidders for the completion of their work and fulfilling of their contracts, - - - - "

R. S., c. 23, § 40 (ante 1961 amendment)

The Standard Specifications of the State Highway Commission, revision of January, 1956, applicable to this case recite the glossary which follows, with most italics added:

> "Definition of Terms
>
> **101 - 9, Contract.** The *agreement* covering the performance of the *work* and the furnishing of materials for the proposed construction.

It should be understood by all concerned that the - - - *'Standard Specifications'* - - - *are a part of the contract and are to be considered as one instrument.*

"**101 - 17, Equipment.** *All machinery, together with the necessary supplies for upkeep and maintenance,* and also all tools and *apparatus* necessary for the proper construction and acceptable completion of the work.

"**101 - 52, Work.** It shall be understood to mean the furnishing of all labor, materials, *equipment* and other incidentals *necessary* or *convenient* to the successful completion of the Project and the carrying out of all duties and obligations imposed by the Contract.

"**103 - 4, Requirements of Contract Bond.** - - - - This bond shall guarantee due execution and faithful performance and completion of the *work* to be done under the contract and the payment in full of all bills and accounts for material and labor used in the work, and *for all other things contracted for or used in connection with the contract;* - - - - "

"**106 - 13, Responsibility for Damage Claims.** - - - - The Contractor shall promptly pay all bills for labor, materials, *machinery*, water, tools, *equipment*, teams, *trucks*, automobiles, freight, fuel, light and power and *for all other things* contracted for *or used by him on account of the work herein contemplated* and if at any time during the progress of the work or before final payment of any money due the contractor under the terms of this contract, any claim for labor, materials, water, tools, *equipment*, teams, *trucks*, automobiles, freight, fuel, light and power, or for any other things specified as aforesaid - - - - "

The contract of Seaboard Engineering Co., Inc., with the State of Maine was an obligation:

" - - - to supply all *equipment*, appliances, tools, labor and materials and to perform all *work* required for the construction and completion," etc. (Emphasis added.)

That contract affirmatively incorporated by reference the definitions of the Standard Specifications quoted *supra*, by providing that the highway should be constructed:

" - - - in strict conformity with the provisions of this contract, - - - and *Standard Specifications, Revision of January 1956 - - -*" (Emphasis ours.)

The guaranty bond contained the following engagements:

"The condition of this obligation is such that if the .............. Contractor .... shall faithfully perform the contract on his part and satisfy all claims and demands incurred for the same and shall pay all bills for labor, material, *equipment* and *for all other things* contracted for or *used by him* in connection with the work *contemplated by said contract* - - -" (Emphasis supplied.)

The context of both the contract and of the indemnifying bond, elucidated by the exegetic definitions contained in the Standard Specifications, vouchsafe a single conclusion, that the defendants underwrote all just and unpaid claims for the benefits of equipment, for materials and for services such as the "use" plaintiffs, Lee Brothers, furnished to the subcontractor, Aaron Construction Company, and which were utilized by the latter — and in so far as they were so utilized by it — in the accomplishment of the highway project. The definitional amplifications of the terms, "work" and "equipment," are sufficiently comprehensive.

The heavy equipment involved here was at the trial conceded by the defendants to be essential to highway building which in its present day proportions and tempo could not be accomplished without such powerful instrumentalities for actually transforming landscapes. It follows then that the use of such equipment by the subcontractor was an

eventuality which the defendants are chargeable with having apprehended and foreseen.

The wrecker service, repairs, moving and grease also are valid charges by authority of the Standard Specifications.

The court's instruction to the jury that the liability of the defendants was restricted to items which were substantially consumed in the road construction was erroneous and is negated by this contract and bond.

This case is readily distinguished from *Carpenter, Treas.* v. *Susi*, 152 Me. 1, which was an action upon an indemnity bond brought on behalf of a supplier to recover the sale price of tires and tubes as well as the cost of vulcanizing and retreading services, furnished to the contractor upon a highway project. The evidence failed to demonstrate sufficiently the association of the materials afforded with the particular road construction designated. This court explained that the substantial consumption doctrine would have been controlling adversely as to the tires and tubes bought and sold had the evidence necessitated further decision. The subjoined statement from *Clifton* v. *Norden*, 177 Minn. 288, 226 N. W. 940, was quoted with approval:

> " 'Tires of motor trucks are parts of the complete machine which on principle may or may not be chargeable against the bondsmen, according as there is or is not proof that they were consumed on the particular contract - - - In the absence of proof that they were at least substantially consumed - - - there can be no recovery for such things as - - - tires'."

The case at bar is not a suit to obtain the market value, the great cost or the sale price of the mammoth chattels of Lee Brothers but this is an action to collect rental for such time as that indispensable heavy road equipment was employed in a specific road making. We need give heed here to the elements of attrition, depreciation or consumption of materials only to any extent necessary in ascertaining

the work life of the equipment as such may affect a calculation of fair rental and in respect to the topics of repairs, grease and like incidentals. The major charge is for usage and such is specially validated by contract and bond. There is considerable rational propriety and consistency in a recovery by the "use" plaintiffs. We do not imply that the functioning of their equipment, the moving of earth through distance, is classifiable as "labor" but it was mechanized labor and an astonishingly efficient substitute for thousands of work-hours of human labor. The benefits and contribution in furtherance of highway construction are the same whether the factor be human work or the relocation of dirt and rock by mechanized equipment.

The bond in the case at bar protects the "use" plaintiffs. *Carpenter, Treas.* v. *Susi, supra,* 152 Me. 1, 10.

There are many decided cases interpreting as many variantly worded statutes, highway contracts and appended bonds. The conclusions are divided. The terms, "labor" and "materials," particularly are accorded sometimes very contained and sometimes very elastic scope where the contract and bond are not so explicit and apt as those in the present case. The authorities are assembled in 44 A. L. R. 381 - 386 and supplemental decisions.

A decision as to coverage here must be predicated upon the particular contract, bond, specifications and facts of the case at bar.

The appeal of the plaintiff is sustained. A new trial is granted but only for the assessment of damages in accordance with the special, jury findings and this opinion.

*Appeal sustained:*

*New trial granted only as to damages in accordance with the special jury findings and this opinion.*