FRANK O. NUTTING, APPELLANT, v. WATSON, WOODS BROTHERS & KELLY COMPANY, APPELLEE.

FILED MAY 21, 1909. No. 15,695.

1. **Sales:** CONTRACT: REMEDIES. Where the written contract for the sale of a horse, entered into without fraud, misrepresentation or deceit of any kind, contains all of the agreement between the parties thereto, including the remedy of the vendee in case the horse should fail to reach a certain standard as a foal getter, the court should not by implication extend to him another remedy, or make for the parties another and different contract.

2. ————: ————: ————. Where the only remedy provided by the contract in case of failure is the right to return the horse and receive another in his place of equal value, the death of the horse, without fault on the part of the vendor, before there is any offer to return him, or demand that he be replaced by another of equal value, does not entitle the vendee to maintain an action on the contract for damages for an implied breach of warranty.

APPEAL from the district court for Lancaster county: LINCOLN FROST, JUDGE. *Affirmed.*

*J. B. Strode* and *A. V. Proudfoot,* for appellant.

*Hall, Woods & Pound, contra.*

BARNES, J.

Action for damages based upon an alleged breach of warranty in the sale of a stallion. Judgment for the defendant, and the plaintiff appealed.

The contract of sale reads as follows: "Know all men by these presents: that we have this day sold to F. O. Nutting the imported Percheron stallion Demon, No. 46,420, color, grey black. Foaled 16th day of May, 1900. We guarantee mares bred with impregnator, properly used, same as with stallion. In consideration of the sum of $2,000, the receipt of which is hereby acknowledged. Guarantee. If the above named stallion does not get sixty per cent. of the producing mares in foal with proper care and handling, we agree to replace him with another stallion of the same value, upon delivery to us of said stallion in as sound and as good condition as he is at present. This is the only contract or guarantee given by us, and is not to be changed or varied by any promises or representations of agents. Dated at Lincoln, Nebraska, Feb. 3d, 1904. Watson, Woods Bros. & Kelly Co., By Geo. J. Woods, Treas."

The plaintiff, who was a breeder of horses, took the stallion in question and placed him in the stud at his

33

home in Indianola, Iowa. What occurred thereafter is best told by the correspondence between the parties. It appears that on July 4, 1904, the plaintiff wrote to defendant making complaint as to the breeding qualities of the horse, and in answer the defendant wrote to plaintiff as follows: "Lincoln, Neb., July 8th, 1904. Mr. F. O. Nutting, Indianola, Iowa. Dear Sir: We have your favor of July 4th and are very sorry to hear that Demon is not fulfilling his guaranty; however, we think it is pretty early to tell, and wish you would take the matter up again with us, some time in the winter. Yours very truly, Watson, Woods Bros. & Kelly Co., By Mark W. Woods, Treas." Again on December 14 the plaintiff wrote the defendant as follows: "Indianola, Ia., Dec. 14th, 1904. Watson, Woods, Bros. & Kelly Co., Lincoln, Neb. Dear Sirs: In reply to your letter of the 10th, I cannot send the letter you want. I wish I could. I bred fifty-four mares to Demon in the spring and fall season, twenty-four I know are not in foal, and there is not one I know to be in foal, but feel sure there are some. * * * Now I have three propositions to make: Ship the horse back to you, at your expense, and refund the $2,000. Or make an exchange, you to pay the expense. Or let me keep him another year, then if he does not get fifty per cent. of his mares in foal, then make an exchange or refund the money. * * * Now I will tell you what I think about the horse. I think he would be reasonably sure with lots of exercise and not kept too fat. Imported horses are very often not sure the first year. I will tell you why I do not wish to change horses. You would want to put in an inferior horse which I would not do. I paid for a good one, and would expect a good one in exchange. Hoping to hear from you soon, I am respectfully, F. O. Nutting." To this letter the defendant replied as follows: "Lincoln, Neb., Dec. 16th, 1904. F. O. Nutting, Indianola, Ia. Dear Sir: We have your favor of Dec. 14th and note contents. We are very sorry that your horse did not do well for you this year. But it is some-

Nutting v. Watson, Woods Bros. & Kelly Co.

times the case with a newly imported horse. We have a full brother of your horse in our barn that is one year younger that is a match for your horse, equally as good in every way, but not quite as large. If you wish to make an exchange for him I think he will be entirely satisfactory to you. If you wish to try this horse another year we will extend our guaranty one year longer. Yours very truly, Watson, Woods Bros. & Kelly Co., Mark W. Woods, Treas." Upon the receipt of the foregoing letter the plaintiff wrote the defendant as follows: "Indianola, Ia., Dec. 20th, 1904. Watson, Woods Bros. & Kelly Co., Lincoln, Neb. Dear Sirs: In reply to your letter of 16th I think it would be best for me to try Demon another season. I see no reason why he should not get colts with proper handling, which I shall try to give him. Respectfully, F. O. Nutting." It appears from the evidence that the plaintiff again placed the horse in stud in the spring of 1905, and on June 1 of that year he died of inguinal scrotal hernia, strangulated bowels. The record also contains competent evidence tending to show that the horse up to the time of his death had not proved to be a 60 per cent. foal getter.

At the close of all of the evidence the district court directed the jury to return a verdict for the defendant, and this is one of the principal errors assigned by the plaintiff. In support of this assignment it is contended that it was the province of the jury to determine whether or not the defendant warranted the horse to be a 60 per cent. foal getter, and it was error for the court to decide that question. It was argued that the contract is ambiguous, and should be construed most strongly against the defendant, and that by giving it such construction it implies a warranty, for the breach of which plaintiff is entitled to maintain an action for damages. In support of this contention several authorities are cited, but it seems to us they have no application to the facts of the case. The agreement in question is plain and unambiguous in its terms, and contains no warranty either express or im-

plied. By it the defendant agreed, in case the horse should not get 60 per cent. of the producing mares in foal with proper care and handling, to replace him with another stallion of the same value, upon delivery of said stallion in as sound and as good condition as he was at the time of the sale. It was also expressly provided that this was the only contract or guaranty given by the defendant, and that it was not to be changed or varied by any promises or representations of its agents. It is not claimed that there was any fraud or misrepresentation in the transaction. It was therefore competent for the parties to make such a contract. They had the right to determine what remedy the plaintiff should have in case the horse did not come up to the terms of the agreement as a foal getter. This contract having been reduced to writing cannot now be varied or changed by evidence of any other parol agreement. The court cannot substitute another or different contract for the one in question, or make another or different contract for the parties where they have without fraud contracted for themselves. It follows that, in case the plaintiff desired to pursue his remedy thereunder, he must have offered to return the horse and have demanded another one of the same value. By his letters plaintiff recognized this to be his only remedy, but he declined to pursue it until after the death of the horse, when he was unable to comply with its terms. It appears that he liked the animal; that he did not want to exchange him for another, and that he expressed the belief that with proper care he would prove to be a reasonably sure foal getter. It further appears that the defendant was willing to extend the time limit of the agreement to replace the animal with another horse equally as good for another year from and after the middle of December, 1904. So at the time of the death of the horse the parties were in the same situation they would have been had the horse died at any time during the year immediately succeeding the date of the sale.

In *Dunham v. Salmon*, 130 Wis. 164, it was held that,

where a horse was sold under a warranty that if he did not comply therewith the seller would furnish another horse in exchange on the return of the horse sold at a time and place, accompanied by proof of breach of warranty, and the buyer did not return or offer to return the horse at the time and place, he could not rely on a breach of warranty when sued on a note given for the price. In *De Witt v. Berry*, 134 U. S. 306, it was said: "When parties have reduced their contract to writing, without any uncertainty as to the object or extent of the engagement, evidence of antecedent conversations between them in regard to it is inadmissible." In *Seitz v. Brewers Refrigerating Machine Co.*, 141 U. S. 510, the court said: "When the writing itself upon its face is couched in such terms as import a complete legal obligation without any uncertainty as to the object or extent of the engagement, it is conclusively presumed that the whole engagement of the parties, and the extent and manner of their undertaking, were reduced to writing." In *Zimmerman Mfg. Co. v. Dolph*, 104 Mich. 281, it is said: "The parties had deliberately put their contract in writing. No fraud is claimed in the execution of the contract. The only warranty for which the plaintiff is liable is that contained in the written contract." In *Conant v. National State Bank*, 121 Ind. 323, we find the following: "Where parties commit their contract to writing, by that writing they must stand, where there is neither fraud nor mistake. This must be true, or else the distinction between oral and written contracts will be utterly broken down. Where there is a written instrument embodying the terms of the contract between buyer and seller, an express warranty cannot be imported into the contract by parol evidence. Where the writing contains an express warranty, implied ones are excluded. This doctrine rests upon the general rule already stated, and is one among the best settled in the law." In *Ehrsam v. Brown*, 64 Kan. 466, it was held that whether parties have committed their entire contract to writing is a question for the deter-

mination of the court. In this determination the writing itself is the guide. If on its face it imports to be complete, that is, if it contains such language as imports a complete obligation between the parties, it is complete, and parol evidence will not be admitted to extend this obligation to cover matters upon which the writing is silent.

Now, when the horse in question herein was sold, the buyer and the seller, as we read the evidence, stood upon equal ground. The one knew no more than the other about his breeding qualities. Defendant was engaged in importing and selling horses, and had just received the horse in question from France. This was known to the plaintiff, and plaintiff also had knowledge of the fact that defendant possessed no more information upon the question of its foal-getting qualities than such as was contained in the recommendation of the breeder. Plaintiff was himself a breeder and raiser of horses, and was willing to take the risk that the stallion would reach the standard of 60 per cent. as a foal getter, on the sole condition that, if he failed to reach that standard, plaintiff should have the right to another horse in exchange. This contract provided the remedy in case of such failure, and the plaintiff accepted it. The law will not by implication afford him another remedy. Treating of this question in the case of the *Reeside,* 2 Sumn. (U. S. C. C.) 567, Mr. Justice Story said: "I apprehend that it can never be proper to resort to any usage or custom to control or vary the positive stipulations in a written contract, and, *a fortiori,* not in order to contradict them. An express contract of the parties is always admissible to supersede, or vary, or control, a usage or custom, for the latter may always be waived at the will of the parties. But a written or express contract cannot be controlled, or varied, or contradicted by a usage or custom, for that would not only be to admit parol evidence to control, vary, or contradict written contracts, but it would be to allow mere presumptions and implications,

properly arising in the absence of any positive expressions of intention, to control, vary, or contradict the most formal and deliberate written declarations of the parties." The principle is that, while parol evidence is sometimes admissible to explain such terms in the contract as are doubtful, it is not admissible to contradict what is plain, or to add new terms thereto. We think this case should be ruled by the foregoing decisions, and therefore plaintiff's contention cannot be sustained.

Again, the sale in this case was complete. The price was paid and the property was delivered. It is not asserted, and it cannot be successfully contended, that, if the horse had died shortly after the sale took place, the plaintiff could have claimed a return of his money on that account. The fact that the defendant extended the guaranty for another year did not change the contract, and of itself affords no right of recovery on account of the death of the animal. Its death was the plaintiff's misfortune, because he was thereby deprived of the power to tender the horse for exchange, as was undoubtedly his right had the animal remained alive.

Finally, it seems clear that the plaintiff was not entitled to any relief in this form of action, for it must be observed that he counts squarely upon the written contract, and is in no condition to comply with its terms. This renders the case unlike the ones which plaintiff has cited in support of his contention. In some of them there was an express warranty, while in the others the written contract was abandoned, and recovery was sought on another and different warranty than that contained in the written contract.

For the foregoing reasons, we are constrained to hold that the district court properly directed the jury to return a verdict for the defendant. This holding renders it unnecessary for us to consider any of the other assignments of error contained in the record.

For the foregoing reasons, the judgment of the district court is

AFFIRMED.

ROSE, J., not sitting.