E. W. JUDKINS *vs.* R. M. CHASE.

SAME *vs.* H. F. JONES.

SAME *vs.* H. L. ABBOTT.

Piscataquis.    Opinion February 19, 1924.

*When the language of a contract is susceptible of two meanings, that will be preferred which is fair and reasonable over one which presumes a fraudulent intent.*

In this case the evidence does not disclose any fraud on the part of the vendor, and the contract must be interpreted to mean a replacement, in case of failure as a foal getter, by a stallion equal in value to the one sold, if he had met the warranty as a foal getter.

In case of a breach of the warranty as a foal getter, the defendants were limited to the remedy agreed upon in the contract, viz.: to return the stallion and demand another of equal value.

Not having returned the stallion or offered to return him at the time provided in the contract, nor shown that such return was waived by the vendee, or any facts that would excuse the defendants from complying with the contract in this respect they must be held to have accepted the horse as without a warranty and are therefore liable on the notes as declared on.

On report.    Actions of assumpsit on notes taken for the sale of a stallion, which were endorsed and delivered to the plaintiff, as he alleges, for value, and before maturity, without any knowledge of any infirmity.    The defense set up was fraud and failure of consideration.    This is the second trial, the case having been tried before and reported in 121 Maine, 230.    Judgment for the plaintiff.

The case is fully stated in the opinion.

*C. W. and H. M. Hayes,* for plaintiff.

*Harry Manser,* for defendants.

SITTING: HANSON, PHILBROOK, DUNN, MORRILL, WILSON, DEASY, JJ.

HANSON, J., did not concur.

WILSON, J.    These cases upon other issues have previously been before this court.    See 121 Maine, 230.    They are now here on a

report consisting of the evidence taken out at the former trial supplemented by testimony relating to the success of the stallion as a foal getter during the year 1918, previous to the sale to the defendants, and also during the year 1920. The plea in each case at the former trial was the general issue. It is now stipulated that the defendants' several pleadings may be regarded as amended by setting up a partial failure of consideration, though it does not appear upon what grounds, whether of fraud or of breach of warranty.

The question of whether the plaintiff is a bona fide holder for value is also raised. Although the jury by a special finding at the first trial found against the plaintiff on that question, it is unnecessary to decide this point now in view of the final conclusions of this court.

As pointed out in the former majority opinion of the court, the evidence does not disclose a total failure of consideration; but either, if no fraud or breach of warranty be shown, merely an inadequacy of consideration, for which no recovery can be had, *McCormick v. Sawyer*, 108 Maine, 405; or, if fraud or a breach of warranty be shown, only a partial failure of consideration.

As to the question of fraud, which is never presumed, but must be clearly shown, the burden is upon the defendants if they urge it. Upon this ground we think they have failed. They rely upon the language of the contract, the transfer of the notes to the plaintiff by the vendor, and the failure of the plaintiff's testimony to satisfactorily show the capacity of the stallion as a foal getter for the year previous to the sale.

It is urged that the contract is fraudulent upon its face, because it provides that in case the stallion failed to get fifty per cent. of the mares bred to him with foal, the only recourse for the vendees under its terms is to return the stallion to the vendor and receive another of "equal value." The contention being that this provision could be complied with by replacing him with another stallion of the same value as the one sold proved to be, i. e., with another stallion worthless as a foal getter.

While as stated in the previous opinion of this court, the contract, if construed literally, may be susceptible of this construction, such we think is not the true interpretation. A construction which renders a contract lawful is preferred over one which renders it unlawful. Williston on Contracts, Section 620. *New Sharon Water Power Co. v. Fletcher*, 88 Maine, 571. Fraudulent intent is not to be presumed.

Unless otherwise shown, good faith is presumed between parties to an agreement; and where its language is susceptible of two meanings, that will be accepted which is fair, reasonable and lawful over one which presumes a fraudulent intent.

Nor is this form of contract unusual in sales of animals for breeding purposes, or the redress provided without precedent in the sales of merchandise in respect to its restricting the remedy to replacement in case of failure to serve the purpose for which it was sold. See Notes 50 L. R. A., (N. S.), 753, 774, 778; 24 R. C. L., 241, Section 517; *Nutting* v. *Watson, Wood Bros. & Kelly*, 84 Neb., 464; *Standing Stone Bank* v. *Walser et al.*, 162 N. C., 63.

The form of contract in this case was one evidently prepared for general use and not for this particular sale, its purpose being to guarantee to the vendees the foal-getting capacity of the animal, but to disclaim any other form of warranty, and to limit the vendees' remedy, in case of a failure to conform to a warranty as to foal getting, to a return of the animal and a replacement by a stallion of equal value to the one sold if he had complied with the warranty. The vendees are to be made whole in case of a breach of the warranty, not in money, but by providing them with an animal equal in value to the one they supposed they were purchasing. We think there can be no fraud presumed from this.

The fact that the vendor soon after the sale transferred the notes to the plaintiff, and that the evidence of the stallion's potency as a foal getter during the year previous to the sale to the defendants may not be conclusive as to his ability to comply with the guaranty given to the defendants, might under some circumstances be entitled to be given considerable weight; yet in view of the evidence as to the effect of care and physical condition of both stud and dam, and further in view of the fact that in case of failure, the vendor was obliged to replace with another of equal value, it falls far short of clearly showing any intent to defraud the defendants.

The defendants having failed to sustain the burden of showing that the contract of sale was tainted with fraud, the question then arises whether a failure to comply with the guaranty being shown, they had any other redress than by a return of the stallion with a demand for replacement in accordance with the terms of the contract, unless an offer to return is waived or their demand for replacement is refused.

Such contracts for the sale of blooded animals for breeding purposes have been frequently upheld in other jurisdictions and the vendee limited to the redress therein provided, especially where by the terms of the contract, it is made exclusive.    *Nutting* v. *Watson, Wood Bros. & Kelly,* supra; *Standing Stone Nat. Bank* v. *Walser et al.,* supra; *Crouch & Son* v. *Leake,* 108 Ark., 322; *Highsmith* v. *Hammonds,* 99 Ark., 400; *Walters* v. *Akers,* 31 Ky., L. Rep., 259; *Beckett* v. *Gridley,* 67 Minn., 37; *Oltmanns Bros.* v. *Poland,* (Tex. Civ. App.), 142 S. W., 653; *Dunham* v. *Salmon,* 130 Wis., 164.

It was especially provided in the contract in the case at bar that the vendor should not be accountable or responsible except in case the stallion failed to get fifty per cent. of the mares bred to him with foal, and his liability limited to replacing him with another of equal value in case the animal was returned by the vendees within a definite time.

In case of breach of this warranty as a foal getter, upon a return and refusal to replace, or a waiver by the vendor of this provision as to return, the vendees would, of course, have an action for damages; and in an action by the vendor for the purchase price they might invoke as a defense a partial failure of consideration by reason of such a breach, but before they could successfully maintain such a defense they must show a compliance with the contract on their part and a return of the stallion not later than the first week in April, 1920, or a waiver of this provision on the part of the vendor.

Since it is not claimed that any such return was made, was this requirement in any way waived by the vendor or the defendants excused from complying therewith?  We find no evidence in the reported case sufficient to warrant a finding that this provision of the contract was waived, nor indeed is it really urged by the defendants. There is some evidence that the vendor was away from Foxcroft in 1918 and 1919, but it does not appear that he was not there during the first week in April, 1920, or that he could not, or would not, if then requested, have replaced the stallion as required under the contract.

Counsel in examination of witnesses apparently assumed that return and replacement were to be made, if at all, in April, 1919. A reading of the contract will disclose that although the year is left blank, this assumption is not correct.  The return was to be made at Foxcroft during the first week in April, 1920.

That letters written by one of the defendants to the vendor in 1919, it appearing that he was out of the State during that period, either engaged in war work or for his health, were never returned or answered, does not satisfy the burden resting on the defendants to show a return of the horse in April, 1920, or an offer to return and a refusal to accept and replace, or a waiver by the vendor of this provision of the contract of sale, or furnish a valid excuse to the defendants for not offering or taking any steps to comply therewith at the time fixed in the contract.

Failing to avail themselves of the redress provided in their contract in case of a breach of the only warranty made, they must be held to have accepted the horse as without a warranty and are therefore liable on their note. Entry will be in each action:

> *Judgment for plaintiff in the sum of $1,400 with interest from date of notes to date of judgment. Interest to be computed by the clerk.*