PORTLAND MORRIS PLAN BANK

*vs.*

OSCAR H. WINCKLER ET AL.

Cumberland.     Opinion Sept. 19, 1928.

*Jacob H. Berman,*
*Edward L. Berman,*
*Benjamin L. Berman,* for plaintiff.
*Albert E. Anderson,* for defendant.

SITTING: WILSON, C. J., PHILBROOK, DEASY, STURGIS, BARNES, BASSETT, JJ.

BASSETT, J. This is an action of assumpsit by the payee to recover on a joint and several promissory note for $600, dated December 18, 1923, payable nine weeks after date, against the makers, Pauline A. and her husband, Oscar H. Winckler and Jacob L. Hackenberg, who signed for the accommodation of the Wincklers. They were defaulted. Hackenberg pleaded the general issue with brief statement that the note was obtained from him by the payee

by fraud. Verdict for the defendant. The case comes up to this court on exceptions and general motion.

EXCEPTIONS.

The note was given in renewal of an overdue note for the same amount, dated July 24, 1923, payable in three months, signed by the Wincklers and one Oerter for their accommodation.

The note, one of the plaintiff's regular forms, was made out at the plaintiff's office by its treasurer Holden, handed for the purpose of obtaining co-makers to Mr. Winckler who took it to Hackenberg. It was brought back to the bank by Winckler and the renewed note delivered to him.

Hackenberg testified that, when the note was brought to him by Winckler, he refused to sign until he had talked with Holden and immediately called him on the phone. Against the objections of the plaintiff, he was permitted to testify that Holden told him that the bank had security in its possession to cover the note, that as a result of this statement of the treasurer he signed the note, and that he relied upon the statement.

The exceptions before us are those taken to the admission of this evidence.

The plaintiff's objections were two. First, the treasurer did not have any authority to state that the bank held collateral to cover the note.

We think the point is not well taken.

The by-laws of the bank provided that the duties of the treasurer were the signing of checks, signing of notes in the event of borrowing from the bank, acting in the capacity of manager, signing certificates of deposit for funds left with the bank, signing certificates of stock, paying out on loans of the bank after approval by the board or its delegated committees, acting as custodian of the bank's funds and custodian of the bank's collateral.

"When a bank presents its cashier as habitually performing certain acts or duties that may be regarded as official duties, and for the performance of them, he may be regarded as its general agent. He cannot be regarded as a general agent for the transaction of all business of the bank. - - - - A cashier, it is well known, is allowed to present himself to the public, as habitually accus-

tomed, - - - - to receive payment for bills of exchange, notes and other debts due to the bank. - -- - - His true position appears to be, that of a general agent for the performance of his official and accustomed duties. While acting within the scope of this authority he would bind the bank." *Franklin Bank* v. *Steward*, 37 Me., 519, 522.

"In short he is considered the executive officer through whom and by whom the whole moneyed operations of the bank in paying or receiving debts or discharging or transferring securities are to be conducted." *Fleckner* v. *Bank of U. S.*, 8 Wheaton, 338.

Applications to the plaintiff for loans were received by one of its clerks, the assistant treasurer, or treasurer, checked up for purposes of information, turned over to the treasurer, and by him taken up with the loan committee, of which he was a member, for its approval or disapproval.

The treasurer was, by virtue of his office, custodian of the overdue note and, both by virtue of his office and by provision of the by-laws, custodian of any collateral for it. He had by virtue of his office the duty to obtain payment of notes. This note was in effect to be renewed but with a change in the accommodating signer. He had drawn the renewal note and given it to one of the makers to procure co-makers. When so signed, he was to present it to the loan committee. The overdue note and the renewal note were, at the time of the alleged telephone conversation, a present, pending, not a past, transaction. *Franklin Bank* v. *Steward*, supra; *Central Bank* v. *Allen*, 16 Me., 41, 44. He had full knowledge of the facts connected with the transaction. He was the proper person to apply to for the information which, it was claimed, he was asked for by one who was to be a co-maker. His answer was the answer of the bank.

"Whatever an agent does or says in reference to the business in which he is at the time employed and within the scope of his authority is done and said by the principal." *American Fur Company* v. *United States*, 2 Peters, 364; *Franklin Bank* v. *Steward*, supra, at page 526.

His statement that there was collateral to cover the renewal note was on the point of his authority admissible.

Second, the statement was parol evidence varying the terms of a written contract.

The note read in part, "there having been deposited herewith as collateral security Installment Certificate of said Bank No. . . . and - - - -." This the plaintiff claims was equivalent to its expressly stating there was no collateral. There was admittedly no collateral.

We think this point was not well taken. The issue raised by the pleading and sent to the jury was fraud; viz., that the defendant was induced to sign the note because of fraudulent misrepresentations of the plaintiff.

The defendant claimed that the plaintiff by its treasurer made an affirmative statement that it held collateral security to cover the note to be signed, which statement was untrue and known by the plaintiff to be untrue and upon the truth of which he relied and which induced him to sign.

If these elements of fraudulent misrepresentation were proved, the defense of fraud was established. One of the elements was the statement of fact.

There is a distinction between mere promises and statements of a bank cashier that the bank would release a surety or no longer look to him for the payment as being a void contract and representations of fact made by such cashier which induces another who had a right to rely thereon to do or omit to do something to his injury; i.e., between contract, and estoppel or fraud. *Cochecho Bank* v. *Haskell*, 51 N. H., 116, 123 (which case held contra to *Franklin Bank* v. *Steward*, supra, as to the authority of the cashier) ; *Bank of Neelyville* v. *Lee*, 196 S. W., 43 (Mo. App.) ; *Bank of U. S.* v. *Dunn*, 6 Peters, 20, 23 ; *Hill* v. *Ely*, 5 Serg. & Rawle, 363, 9 Am. Dec., 376 ; *Cherokee County et al* v. *Meroney et al*, 92 S. E., 616, 617 (N. C.) ; *Barnstable Savings Bank* v. *Ballou*, 119 Mass., 487, in which case the defendant disclaimed fraud.

A party is not precluded from introducing testimony of other allegations made at the time than those contained in the written contract for the purpose of proving fraud. *Prentiss* v. *Russ*, 16 Me., 32 ; *Neal* v. *Flint*, 88 Me., 83 ; *Marston* v. *Kennebec etc. Ins. Co.*, 89 Me., 272.

The alleged statement of the treasurer was, on the point of the parol evidence rule, admissible.

Nor was the plaintiff, as contended by it, a "holder in due course." While a payee may be a holder in due course, the plaintiff was an "immediate party." *Liberty Trust Company* v. *Tilton*, 217 Mass., 462; *National Investment and Security Company* v. *Corey*, 222 Mass., 453, 455.

MOTION.

The defendant had the burden of proof of, that is the burden of establishing, fraud. Brennan's Negotiable Instrument Law, 3rd Ed., 217; *Harvey* v. *Squire*, 217 Mass., 413.

And to establish it by clear and convincing proof. *Strout* v. *Lewis*, 104 Me., 65; *Bixler* v. *Wright*, 116 Me., 133.

"In effect the proceeding here involved the reforming of a written contract on the ground of fraud and the law is well settled that to enable a court in equity to exercise this power proof of the fraud must be full, clear and decisive and relief will not be granted where the evidence is loose, equivocal or contradictory or in its texture open to doubt or opposing presumptions. - - - - This rule is especially enforced where the oral evidence comes mainly from the parties to the suit." *Strout* v. *Lewis*, supra.

We do not think the defendant's proof in this case meets the requirements of the rule.

Hackenberg, in addition to his testimony that Holden told him over the phone that the bank had collateral to cover the note, testified that Holden at the same time, and again on the following day on the street near the bank, told him that three signatures were required but only as a matter of form "to get by the bank inspectors and the directors of the bank" and the bank would not hold him liable on his endorsement. Whether or not Holden would be authorized to make these last statements by virtue of his general authority as treasurer and without proof of actual authority, *Bank* v. *Haskell*, supra; *Davis* v. *Randall*, 115 Mass., 547, 551; *First Natl. Bank of Lumberton* v. *Lennon*, 85 S. E., 715 (N. C.), is not before us, for the question of the admissibility of the testimony was not raised.

Holden denied that Hackenberg talked with him over the phone

or that he ever made the alleged statements to Hackenberg.

Hackenberg's testimony was not corroborated in any particular. Hackenberg admitted that he understood what his liability as an accommodation signer was, that he knew a note had to be approved by the directors or the loan committee of the bank and by the State Bank Examiner. Holden had explained to him how loans were obtained from the bank. He had signed as accommodation co-maker at least three notes prior to the note in suit, one of which was for the Wincklers, dated February 25, 1923, on which a balance was due and paid by Hackenberg on September 2, 1924.

It did not appear that Hackenberg ever objected to the payment of the note in suit because of fraud or that he ever, except on the witness stand, referred to or repeated the alleged statements of Holden on which he relied to prove fraud, although there were several occasions when it would have been naturally and reasonably expected of him.

Nor does any reasonable or sufficient motive appear for Holden's trying to obtain the defendant's signature. The bank held Winckler's note, approved by the directors, with an endorser. Winckler, not Holden, was interested in getting any renewal note. Under the rules of the bank, co-makers were not required if there was collateral. If there had been collateral, it is not reasonable to believe that Holden would require Winckler to get co-makers also. If there was no collateral, it is not reasonable to believe Holden would falsely, for he must have known, state there was collateral to get one accommodation endorser in the place of another, and in addition state that three signers were a matter of form and give assurance that the bank would never enforce payment of Hackenberg.

Not only is the evidence of fraud not clear and convincing, but we think it preponderates against the finding of the jury. From a careful examination of the entire evidence, it appears that the jury must have misunderstood, or did not adequately comprehend, the degree of proof necessary and so erred.

The entry therefore must be

*Exceptions overruled.*
*Motion sustained.*