FIRST NATIONAL BANK OF PITTSFIELD

*vs.*

HAROLD L. MORONG ET AL.

AND

NEWPORT TRUST COMPANY

Penobscot.    Opinion, July 24, 1951.

*H. R. Coolidge,*

*Lloyd R. Stitham,* for plaintiff.

*Edward Stern,*

*Michael Pilot,*

*W. F. Jude,* for defendants.

SITTING: MURCHIE, C. J., THAXTER, FELLOWS, MERRILL, NULTY, WILLIAMSON, JJ.

MURCHIE, C. J.  The issue here presented, on plaintiff's general motion for a new trial, must be considered in the light of the relationship of the six defendants to one Harold L. Morong, who was named as one of seven in the original process.  It was discontinued as to him, on plaintiff's motion, after he had been adjudicated a bankrupt.  At the trial, the defendants moved for its dismissal on the ground that such discontinuance was prejudicial of their rights.  The denial of their motion raises no issue here, no exceptions having been taken, but the fact is noted because the motion was made before the jury and may have influenced its verdict.  The plaintiff's action is authorized expressly by R. S., 1944, Chap. 100, Sec. 74, which was R. S., 1871, Chap. 82, Sec. 47, when *West* v. *Furbish,* 67 Me. 17, was decided.  As was stated in that case, it permits a creditor holding a claim against a bankrupt and some other, or others, to obtain "a speedy judgment against his solvent debtors."

Plaintiff seeks recovery on a promissory note signed by Morong and the defendants at the office of his attorney, on February 7, 1949.  It calls for the payment of $3,700 in one month.  It was executed to take care of an overdraft of Morong's at the plaintiff bank, and was applied to that

purpose on February 16, 1949. It was contemplated that within the month prior to its maturity the defendants, and Morong, would make some definite arrangements for the future. All the defendants referred to the note in their testimony as a "temporary" one. The overdraft had been discussed by Morong, his attorney and the defendants at a meeting convened by him on February 2, 1949. The meeting was attended, at his request, by representatives of the plaintiff. The statements of one of them thereat, according to the defendants, justify the plea entered in the action, and the verdict.

The plea was the general issue, with a brief statement alleging that there was no consideration for the note (binding upon the defendants), and that their "indorsements (of it) were induced and procured by and through the fraud of the * plaintiff." The question of consideration, unless it was intended merely to assert that what there was originated in fraud, is easily disposed of. The overdraft the note paid was an existing debt of Morong's. R. S., 1944, Chap. 174, Sec. 25, provides expressly than an "antecedent or preexisting debt constitutes value," for the execution of a promissory note. Its force was recognized in *Merrill Trust Co.* v. *Brown,* 122 Me. 101, 119 A. 109; *Jordan* v. *Goodside,* 123 Me. 330, 122 A. 859; and *Flynn* v. *Currie,* 130 Me. 461, 157 A. 310.

The issue is fraud. The defendants having raised it, it is clear that they had the burden of establishing it, *Judkins* v. *Chase,* 123 Me. 433, 123 A. 516, by "clear and convincing proof." *Strout* v. *Lewis,* 104 Me. 65, 71 A. 137; *Portland Morris Plan Bank* v. *Winckler,* 127 Me. 306, 143 A. 173. It must be recognized that a jury has determined the fact in their favor, and must be considered to have done so under proper instructions, no exceptions to the charge having been presented. *Frye* v. *Kenney,* 136 Me. 112, 3 A. (2nd) 433. It is undoubted that the plaintiff, seeking a new trial

on general motion, has a heavy burden, that is well stated in *Jannell* v. *Myers*, 124 Me. 229, 127 A. 156, and *McCully* v. *Bessey*, 142 Me. 209, 49 A. (2nd) 230. Factual decisions by a jury will not be disturbed unless so clearly wrong that it is apparent that they are traceable to "prejudice, bias, passion, or a mistake of law or fact."

It might be doubted if the evidence presented would support a factual finding of fraud, without reference to the requirement of "clear and convincing proof" already noted. The finding of fraud, implicit in the verdict, is supported by nothing other than the assertion of five of the defendants, the sixth being unable to be present in court, according to a stipulation duly entered, that one of the representatives of the plaintiff stated, at the meeting of February 2nd aforesaid, that the plaintiff had a mortgage on the building in which Morong was doing business and would foreclose it and put him out of business if his overdraft was not paid, whereas, in fact, the plaintiff held nothing but chattel mortgages on his equipment. Morong was operating a moving picture theatre in the building where the meeting was held. The defendants do not claim that plaintiff's representative said anything in clear and forthright language about a real estate mortgage. Rather they assert it was implied in an inclusive gesture made by that representative in declaring that the plaintiff had a mortgage "on this place." The meeting was assembled by Morong to persuade the defendants to pay his overdraft, in some manner. Collectively, the five who testified held claims against him aggregating more than $13,000. All of them knew about the overdraft and that he owed the plaintiff something like $3,500 on the theatre equipment. All of them wanted Morong to continue in business, in the hope that he could pay all his indebtedness, including his obligations to them. Some of them, in the presence of plaintiff's representatives, discussed the organization of a corporation to take over the theatre property and the plaintiff's claims against Morong.

The representatives of the plaintiff entered the meeting of February 2nd after the defendants had assembled and had had an opportunity to discuss Morong's affairs with him and with his attorney, who was acting, as one of them testified, for "the whole of us, I guess." One of those representatives was requested at the outset, by Morong, to tell the defendants he "hadn't done anything wrong." That representative "would hardly say that," but stated the fact of the overdraft and the necessity for its payment, and offered time for liquidation of Morong's indebtedness to the plaintiff in small payments, declaring expressly that the alternative to payment of the overdraft was that the plaintiff would take the place over and the defendants would not "get a cent." The note was not presented at the meeting. It is written on one of the plaintiff's printed forms and was signed at the office of Morong's attorney. No representative of the plaintiff was present at the time.

The verdict is difficult to understand except on the assumption that the jury decided, in the exercise of its proper function of determining what witnesses were telling the truth, *Jannell* v. *Myers* and *McCully* v. *Bessey,* both *supra,* that the plaintiff's representative had given false testimony in reporting his own statements at the creditors' meeting of February 2nd, and been less than frank in evading questions as to how the printed form note signed by the defendants reached the office of Morong's attorney. Counsel for the defendants laid considerable emphasis on the latter point in their brief, and undoubtedly argued to the jury that such lack of frankness was additional evidence that that representative "had deliberately made false statements to these Defendants, knowing them to be false."

There was a clean-cut conflict of testimony on what the plaintiff's representative told the defendants at the February 2nd meeting. That representative asserted that he told them that the plaintiff had a "chattel mortgage" on the

"theatre equipment." Each and all of the defendants assert that he did not use either the word "chattel," or the word "equipment," but implied that the plaintiff had a mortgage on the theatre building by referring to "this place," when making his statement and gesturing with his arm inclusively. The plaintiff held four chattel mortgages on different items of the equipment of the theatre. Some of them covered subsequent indebtedness and were written in language appropriate to give the plaintiff such rights as Morong had in theatre equipment not owned by him, and in the lease under which he occupied the building where he operated the theatre. It is undoubted that the plaintiff was in a position, as its representative asserted to the defendants, to take the place over and put Morong out of business. This was the action the defendants sought to forestall, and did forestall by executing the note.

The defendants had full opportunity at the meeting of February 2nd to ask the representatives of the plaintiff to explain in full detail what claim or claims it had against Morong's property. They did not do so. The record provides some indication that they had an opportunity to secure all pertinent information from Morong and his attorney before the representatives of the plaintiff entered that meeting. Whatever the fact in that regard, they had five full days, thereafter, to make such investigation as they wished concerning his property and his obligations before they signed the note.

Most, if not all, of the defendants had been lending money to Morong, or cashing his checks, for a considerable period prior to the meeting. It cannot be doubted, accepting their testimony at its face value, that they executed the note to make it possible for Morong to continue in business in the hope that by doing so he might be enabled to pay all his indebtedness, to the plaintiff and to them, or that they intended, when they did so, to make permanent, as distin-

guished from temporary, arrangements within thirty days thereafter. Plaintiff's representatives at the meeting of February 2nd, as at the time the note was delivered to take care of Morong's overdraft, had every right to believe that the defendants were acting with knowledge of Morong's exact circumstances.

The particular basis for the prejudice, bias, or mistake of law or fact, which induced the verdict is not traceable, but it is entirely apparent that the testimony of the defendants would not establish fraud on the part of the plaintiff by that degree of "clear and convincing proof" which decided cases make requisite. See the cases cited *supra*.

*Motion sustained*

*Verdict set aside.*

*New trial ordered.*